In re The MARRIAGE OF Gregory D. FERGUSON, Appellant (Defendant Below),

and

Kathleen R. Ferguson, Appellee (Respondent Below).

No. 02A04–8707–CV–221.

Court of Appeals of Indiana, First District.

Feb. 23, 1988.

Daniel M. Graly, Thomas J. Markle, Barrett & McNagny, Fort Wayne, for appellant.

Louis L. Bloom, Fort Wayne, for appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Gregory Ferguson appeals an Allen Circuit Court order awarding custody of his children to Kathleen Ferguson and ordering him to pay child support. We affirm.

## FACTS

Greg and Kathy Ferguson were married on June 14, 1980. They had two children, Jennifer, born August 2, 1983, and Sara, born May 6, 1985. On September 29, 1986, Kathy moved out of the couple's Fort Wayne home and re-located in Indianapolis. Four days later, Greg filed a petition to dissolve his marriage to Kathy. Greg was granted temporary custody of the children pending the final decree of dissolution.

A hearing was held on April 20, 1987. The court issued a decree on May 7 awarding custody to Kathy and ordering Greg to pay support in the amount of $600 per month plus 20% of any bonus Greg might receive. Greg subsequently perfected this appeal. Additional facts are stated in our discussion of the issues.

## ISSUES

The issues to be resolved on appeal are:

1) Did the trial court improperly use its award of custody to punish Greg for perceived misconduct which occurred during the time his petition for dissolution was pending?

2) Did the trial court abuse its discretion by awarding custody to Kathy?

3) Did the trial court abuse its discretion by including in its support order a percentage of any discretionary bonus received by Greg?

## DISCUSSION AND DECISION

When reviewing both custody and support orders, we apply a manifest abuse of discretion standard. *Means v. Means* (1987), Ind.App., 511 N.E.2d 323, 324; *Fox v. Fox* (1984), Ind.App., 466 N.E.2d 789, 790. We therefore may not reverse a trial court's determination unless it is clearly against the logic, facts and circumstances before the trial court. *Fox, supra* at 790. Deference must be given to the trial court because it is in a position to judge the demeanor and credibility of witnesses. *Id.*

ISSUE ONE:

■ Greg first challenges the custody order on the basis that it was made to punish him for perceived misconduct during the time his divorce petition was pending. We agree with Greg that "a decree of custody may not be made or changed in order to punish a parent." *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23, 34. "It is the children's welfare—not the parents'— that must control the actions of the court." *Wible v. Wible* (1964), 245 Ind. 235, 237, 196 N.E.2d 571, 572. Greg specifically asserts that the language of the trial court's custody order indicates an intent to use custody as a means of punishment. The order provides in pertinent part as follows:

... From these statutorily mandated considerations, the Court has concluded that each parent is and would be a proper and suitable custodial parent, but that the Petitioner father of said children, from the beginning of the dissolution proceedings and virtually throughout the pendancy of the action, has consistently and

concertedly attempted to dictate the terms of Respondent's access to said children for visitation purposes, has attempted to minimize any contact she was entitled to, refused more than minimal visitation which he required to be in his presence or in the presence of others provided by him until the Respondent secured a Court order providing her with specific visitation, and thereafter it can be concluded from the evidence that Petitioner continued on a deliberate course calculated to negatively affect the relationship of the minor children with their mother, the Respondent. That, in spite of Petitioner's testimony, that he believes Respondent to be a capable and effective mother to the children. Other testimony provided by Petitioner of and concerning Respondent, which he may believe but which was not supported by any evidence, suggests, along with evidence of his manner of dealing with the Respondent in the presence of the children, a disregard for the strong relationship between Respondent and the children, and demonstrates a strong effort to undermine it.

(R. 103–104) Greg focuses on the court's use of the phrase "but that" in arguing that his perceived misconduct was the decisive factor in the court's decision to award custody to Kathy. We disagree. The court carefully considered the evidence and merely expressed its concern that Greg's behavior constituted an attempt to affect adversely the girls' relationship with their mother, a relationship which, regardless of custody, needed to be nurtured rather than hindered. We therefore are unpersuaded that the court's order was penal in nature.

ISSUE TWO:

■ Greg next contends the trial court abused its discretion by awarding custody to Kathy. The trial court must award custody according to the best interests of the children. *Fox, supra* at 791. In determining the best interests of the children, the court entertains no presumption favoring either parent. IND.CODE 31–1–11.5–21(a). Rather, the court must consider all relevant factors including:

(1) The age and sex of the child;

(2) The wishes of the child's parent or parents;

(3) The wishes of the child;

(4) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) The child's adjustment to his home, school and community; and

(6) The mental and physical health of all individuals involved.

IC 31–1–11.5–21(a).

Greg asserts specifically that the first four factors favor neither him nor Kathy but that the final two factors favor him as custodian. The court was careful to indicate, however, that it had considered all of the factors in making its decision. The evidence shows that the children were females under the age of four, that both parents desired custody, that the children had positive relationships with both their mother and their father, and that the three-year-old expressed a desire to live with her mother. Greg argues, however, that Kathy has exhibited a lack of emotional stability and that removing the girls from their present environment would have a destabilizing effect on them.

Dr. Leib, a psychologist, testified that Kathy has a tendency to deflect or subvert unpleasant feelings. Kathy left the family residence on September 29 following an argument with Greg. The record indicates that this was not her first departure. On one other occasion, Kathy left home and took Jennifer to a local motel where they stayed overnight. The two returned home the following day, however. Greg relies heavily on the fact that Kathy attempted suicide ten years prior to the dissolution proceedings. We are unconvinced, however, that such a remote and isolated incident merits a reversal of the trial court's custody award, and we note that the evidence is conflicting regarding any subsequent suicide attempts by Kathy. In addition, numerous witnesses testified that Kathy has demonstrated effective parenting

skills and that she continued to relate well to her children despite the demise of the marriage.

Greg also argues that awarding custody to Kathy would in effect uproot the children from the familiar environment of their Fort Wayne home. Dr. Leib's testimony reveals that both Jennifer and Sara are adaptable and well-adjusted children who have developed satisfactorily while in their father's custody. There was no evidence, other than Greg's self-serving testimony, that the children would be unable to adjust to new environs or would be affected unduly by this change.

We are sensitive to each parent's desire to be with the children. It is apparent that the children enjoy a positive relationship with both Kathy and Greg, which makes the court's task additionally difficult. The trial court determined that the interests of the children would best be served by awarding custody to Kathy. Based on the evidence found in the record, we cannot say that the trial court's decision was against the logic, facts and circumstances before it. Accordingly, the award of custody is affirmed.

ISSUE THREE:

■ Greg also contends that the trial court abused its discretion by including in its support order a percentage of any bonus Greg receives. In a dissolution proceeding the court may order either or both parents to pay any amount reasonable for child support after considering all relevant factors including:

(1) The financial resources of the custodial parent;

(2) The standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

(3) The physical or mental condition of the child and the child's educational needs; and

(4) The financial resources and needs of the non-custodial parent.

IND.CODE 31–1–11.5–12(a).

Greg asserts specifically that by including in the support order a percentage of his bonus, the court created a self-adjusting support order. In *Means v. Means* (1987), Ind.App., 511 N.E.2d 323, and *Hunter v. Hunter* (1986), Ind.App., 498 N.E.2d 1278, self-adjusting support orders based on the father's fluctuating earnings were held to be improper. In *Hunter*, the father was an insurance salesman with a fluctuating income. The trial court ordered him to pay child support in the amount of $50 per week plus 25% of any net, after tax wages over $205 per week, but not to exceed $92.50 per week. The court held that the order was defective because it over-emphasized the financial resources of the non-custodial parent and failed to consider: (1) the actual needs of the child; (2) the non-custodial parent's financial means in relation to the other three statutory factors; (3) the speculative nature of such an order; and (4) the possibility of administrative problems which might force the court to intervene in order to insure enforcement of the order. *Hunter, supra* at 1288.

In *Means*, the trial court ordered the father to pay support in an amount not less than $77 per week and not greater than $300 per week. The Third District struck the order, concluding that it lacked consistency, made planning for the child more difficult, and opened the door to possible enforcement problems and evasiveness by the non-custodial parent. *Means, supra* at 324.

In the present case, Greg was ordered to pay a fixed monthly amount of $600, plus 20% of any bonus he might receive. The record reveals that the bonuses given by Greg's company were discretionary annual bonuses based on various factors, including the profitability of each division. Unlike the orders in *Means* and *Hunter*, where the amount would fluctuate on a weekly basis, Greg's children consistently would receive a $600 monthly payment. Thus, any additional support attributable to the bonus would not affect the custodial parent's ability to meet the children's needs on a monthly basis. The percentage of Greg's bonus payable as support could be viewed as an opportunity to provide the children

with periodic extras they may have come to enjoy while living within the family unit.

In addition, the trial court was careful to provide a means of administering the support attributable to the bonus. The order requires that Greg provide Kathy with evidence in writing from his employer of any bonus received along with any taxes deducted from it. Greg would then be required to pay 20% to Kathy within ten days of his receipt of the bonus. Thus, the amount is easily calculable and the parties can proceed without judicial intervention. *See, Patrick v. Patrick* (filed Jan. 18, 1988), Ind.App., 517 N.E.2d 1234. The scope and frequency of administrative problems envisioned in *Means* and *Hunter*, therefore, would not be as broad in this case given the fact that the bonus is received only annually and the trial court has provided specific administrative regulations to alleviate problems of enforcement. We therefore conclude that *Means* and *Hunter* are distinguishable from the present case.

Even absent any factual distinction, we are unpersuaded by the rationale of the *Means* and *Hunter* decisions. In those cases, the Third and Fourth Districts reasoned that self-adjusting support orders over-emphasize the income of the non-custodial parent. On the contrary, we believe that self-adjusting orders, if properly structured, merely reflect the reality that many people have incomes which fluctuate wildly. One could easily envision a situation in which a self-adjusting support order resulted in part from the fluctuating income of the custodial parent and thus a fluctuating need for assistance in financially maintaining the children.

In addition, a self-adjusting support order often takes into account the standard of living the children would have enjoyed absent any divorce. For example, if the non-custodial parent had a fluctuating income during the marriage, then those fluctuations likely would have impacted the family's budget and the standard of living

to which the children were accustomed. Thus, a self-adjusting support order actually might indicate an increased attentiveness to that particular statutory factor.

Finally, a self-adjusting support order need not necessarily cause administrative problems. If the trial court is careful to include in the order easily calculable payments and adequate guidelines for enforcement, the parties readily can ascertain the amount payable and support can be paid without judicial intervention.[1] We therefore conclude that even absent facts which distinguish this case from *Means* and *Hunter*, the trial court correctly included in the support order a percentage of Greg's annual bonus. Accordingly, the decision of the trial court is affirmed.

Affirmed.

NEAL, J., concurs.

BUCHANAN, J., concurs in result.

---

1. This court has upheld escalation clauses in support orders where the amounts were based on readily ascertainable data such as local Support Guidelines, *Herron v. Herron* (1983), Ind. App., 457 N.E.2d 564, or the National Consumer Price Index. *Branstad v. Branstad* (1980), Ind. App., 400 N.E.2d 167.