**Harvey N. BERMAN, Appellant–Defendant,**

v.

**James CANNON and Rhonda Cannon, Appellee–Plaintiff.**

No. 45A03–0703–CV–140.

Court of Appeals of Indiana.

Dec. 26, 2007.

Richard P. Samek, Diana C. Bauer, Carson Boxberger, Fort Wayne, IN, Attorney for Appellant.

Lisa M. Oates, James R. Oates, Oates & Oates, Merrillville, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Harvey N. Berman appeals the judgment against him in favor of James and Rhonda Cannon. Berman raises three issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion when it refused to allow Berman's counsel to explain the medical reasons behind Berman's absence from the trial; and

II. Whether the jury's damage awards to Rhonda and James Cannon were excessive and unreasonable in light of the evidence.

We affirm.

The relevant facts follow. On September 17, 1995, the Cannons were returning home from a historical reenactment. While traveling on I–65, Berman's vehicle struck the right rear portion of the Cannons' van. The Cannon's van was propelled into the median where it rolled an unknown number of times and came to rest on the driver's side. James suffered a concussion, bruising, scratches, and broken ribs. He pulled an unconscious Rhonda from the van, and they were taken to the hospital.

Rhonda suffered a concussion and bruising in the accident. At the hospital, she complained of pain in her right leg, lower back, and the top of her head. On September 19, 1995, Rhonda's family doctor, Dr. Kendall Oetter, noted that she complained of "a concussion and body aches and ... she had pain in the right side of her head in the parietal area, and neck discomfort." Appellant's Appendix at 544. Dr. Oetter prescribed medication and physical therapy. Eleven days later, Rhonda complained of more neck pain that was radiating into her left shoulder and generalized weakness and pain. During physical therapy, she also complained of pain in her back and difficulty walking. Despite continued physical therapy and medication, Rhonda continued to complain of severe pain and numbness to the neck, shoulder area, and back for the next several years. At the time of the trial, eleven years after the accident, Rhonda was still receiving occasional shots to help with the back and neck pain, and she had used a cane when walking for several years. James recovered fully from his injuries within six or seven months after the time of the accident.

The Cannons filed a complaint against Berman on September 16, 1997. During a hearing on motions in limine, the parties and the trial court agreed that, because Berman was unable to attend the trial due to his health, the jury would be told that Berman could not attend the trial "due to circumstances beyond his control." Appellant's Appendix at 1080. During voir dire, Berman's counsel informed the prospective jurors that Berman "will not be able to be here due to circumstances beyond his control." *Id.* at 98. Berman's counsel later told the prospective jurors that Berman was unable to attend the trial and asked if anyone had "any problems with that." *Id.* at 141. Several prospective jurors expressed concern about Berman's absence,

and Berman's counsel asked the trial court for permission to inform the prospective jurors that Berman was absent due to medical reasons. The trial court noted that the issue had "already been determined" and denied the request. *Id.* at 149. After the close of evidence and prior to closing arguments, Berman's counsel made an offer of proof regarding a letter from Berman's doctor. The trial court noted that "the Court's ruling still stands, and the offer has been made for the record." *Id.* at 1081.

The jury assessed 100% of the fault to Berman, awarded $122,755.00 in damages to James, and awarded $2,727,958.40 in damages to Rhonda. Berman filed a motion to correct error and a request for a new trial, arguing that the amount of damages awarded was excessive and not supported by the evidence presented at trial. The trial court denied the motion.

## I.

The first issue is whether the trial court abused its discretion when it refused to allow Berman's counsel to explain the medical reasons behind Berman's absence from the trial. First, we conclude that Berman invited any error by agreeing to inform the jury that Berman could not attend the trial "due to circumstances beyond his control." Appellant's Appendix at 1080. A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct. *Smith v. McLeod Distributing, Inc.*, 744 N.E.2d 459, 466 (Ind.Ct.App.2000). Invited error is not subject to review by this court. *Id.*

Invited error notwithstanding, Berman argues that, because the damages award was "extremely disproportionate to the injuries allegedly sustained, a reasonable inference arises that the jury was

attempting to punish Berman for his absence from trial." Appellant's Brief at 26. "[We] will set aside an award of compensatory damages as impermissibly excessive where it is apparent from a review of the evidence that the amount of damages is so great it cannot be explained upon any basis other than passion, partiality, prejudice, corruption, or some other improper element." *Clancy v. Goad,* 858 N.E.2d 653, 657 (Ind.Ct.App.2006), *trans. denied.* "The jury's damage award will not be deemed the result of improper considerations if the size of the award can be explained on any reasonable ground." *Id.* at 657–658. Further, "[w]hen the evidence concerning the injury and damages is conflicting, the jury is in the best position to assess the damages and the jury's verdict cannot be said to be based upon prejudice, passion, partiality, corruption, or on the consideration of some improper element." *Id.*

As discussed in more detail below, the jury's damage award is within the scope of the evidence. *See infra* Part II. Because the evidence regarding damages was conflicting, the jury was in the best position to determine the amount of damages. We cannot say that the verdict is necessarily based upon prejudice due to Berman's absence from the trial. *See, e.g., Clancy,* 858 N.E.2d at 660 ("We see no tangible indication that the jury acted out of prejudice, passion, or partiality to punish Clancy. Although the amount of the award in this case is sizeable, we cannot conclude that it is unreasonable given the evidence.").

Moreover, in support of his argument that the verdict was based upon prejudice, Berman cites only comments of a juror made post-verdict during discussions between the jurors, the parties, and the trial court. Berman's counsel asked the jurors, "Was the fact that Mr. Berman [was] not here did that impact you?" Appellant's Appendix at 1168. One juror responded, "A little bit, yes." *Id.* Indiana adheres to the common law rule that a verdict may not be impeached by evidence from the jurors who returned it. *Dawson v. Hummer,* 649 N.E.2d 653, 664 (Ind.Ct. App.1995). Ind. Evidence Rule 606(b) is instructive in this situation and provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify (1) to drug or alcohol use by any juror, (2) on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or (3) whether any outside influence was improperly brought to bear upon any juror. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may not be received for these purposes.

Berman's absence from the trial does not qualify under any of the three exceptions in Rule 606(b). Consequently, the juror's statement is not evidence that we may consider. *See, e.g., Evans v. Buffington Harbor River Boats, LLC,* 799 N.E.2d 1103, 1110 (Ind.Ct.App.2003) (holding that this court could not consider juror's alleged comment that she would not agree to a large award because the plaintiff's counsel would receive a portion of it because "[t]his relates to the individual juror's thought process during deliberation and not upon extraneous prejudicial information which is pertinent to the case"), *reh'g denied, trans. denied.*

## II.

■ The next issue is whether the jury's damage awards to Rhonda and James Cannon were excessive and unreasonable in light of the evidence. A person injured by the negligence of another is entitled to reasonable compensation. *Clancy*, 858 N.E.2d at 657. "Reasonable compensation" refers to an amount that would reasonably compensate the plaintiff for bodily injury and for pain and suffering. *Id.* "It also takes into account past, present, and future expenses reasonably necessary to the plaintiff's treatment and all financial losses suffered, or to be suffered, as a result of the inability to engage in his or her usual occupation." *Id.*

■■■ "A jury determination of damages is entitled to great deference when challenged on appeal." *Sears Roebuck and Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind.2001). We will not substitute our idea of a proper damage award for that of the jury. *Id.* (citing *Prange v. Martin*, 629 N.E.2d 915, 922 (Ind.Ct.App.1994), *reh'g denied, trans. denied*). Instead, we look only to the evidence and inferences therefrom which support the jury's verdict. *Id.* "[I]f there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed." *Id.* "Our inability to actually look into the minds of the jurors is, to a large extent, the reason

behind the rule that we will not reverse if the award falls within the bounds of the evidence." *Id.* (quoting *Annee v. State*, 256 Ind. 686, 690, 271 N.E.2d 711, 713 (1971), *reh'g denied*). "We cannot invade the province of the jury to decide the facts and cannot reverse unless the verdict is clearly erroneous." *Id.* This standard has been summarized as follows:

A personal injury award is not excessive where (1) the award was not based upon jury prejudice, partiality, or corruption, (2) the jury has not misunderstood or misapplied the evidence, (3) the award was not based upon consideration of an improper element such as liability insurance, and (4) the award was within the parameters of the evidence. Under such circumstances, we will not substitute our judgment for that of the jury as to reasonable compensation for a plaintiff.

*Clancy*, 858 N.E.2d at 658 (quoting *Ritter v. Stanton*, 745 N.E.2d 828, 843 (Ind.Ct. App.2001), *trans. denied, cert. denied*, 536 U.S. 904, 122 S.Ct. 2357, 153 L.Ed.2d 179 (2002)).

Berman argues that the damages awarded to Rhonda are excessive for several reasons. First, Berman argues that the Cannons failed to establish that Rhonda's injuries and proposed damages were caused by the accident rather than a pre-existing condition.[1] According to Berman,

1. In support of his argument, Berman relies upon *Topp v. Leffers*, 838 N.E.2d 1027, 1036 (Ind.Ct.App.2005) (holding that "the trial court properly granted Leffers' motion for a directed verdict because Topp did not present sufficient evidence to prove that Leffers' actions caused the aggravation of her pre-existing injuries"), *trans. denied; Daub v. Daub*, 629 N.E.2d 873, 878 (Ind.Ct.App.1994) (holding that the trial court properly granted the defendant's motion for judgment on the evidence where the plaintiff failed to present expert testimony establishing that her fall was the proximate cause of her lower back prob-

lems), *trans. denied;* and *City of East Chicago v. Litera*, 692 N.E.2d 898, 901 (Ind.Ct.App. 1998) (reversing a damage award where the plaintiff's physician testified that "he could not say for sure whether the fall was related to the subsequent medical treatment; he opined that the fall may have worsened [the plaintiff's preexisting] condition, and that it was possible that the [plaintiff] would have reached his present condition at some point without the fall"), *reh'g denied, trans. denied.* Each of these cases is distinguishable because, here, Rhonda did present expert medical testimony establishing a connection be-

"it was pure speculation for the jury to decide [Rhonda] was permanently disabled or that the accident was the sole cause of all of her claimed injuries." Appellant's Brief at 38.

The evidence most favorable to the verdict indicates that Rhonda fell in February 1991 and injured her back. An MRI showed moderate disc herniation at L5–S1. Rhonda testified that she totally recovered from that injury. In the years following her recovery, Rhonda did all household chores, did yard work, wallpapered, and painted. Rhonda and James also participated in historical reenactments in which she cooked over a campfire, slept on the grounds, carried large jugs of water, loaded and unloaded heavy gear, split wood, and shot a muzzleloader in a competition. Her family physician, Dr. Oetter, testified that he began seeing Rhonda in 1993 and, prior to the accident, Rhonda never complained to him of back problems.

Following the September 1995 accident, Rhonda complained of severe neck pain and lower back pain. Despite years of therapy and medication, the pain was unresolved at the time of the trial eleven years later. Rhonda continued to receive occasional shots to help with the back and neck pain and had used a cane when walking for several years. Berman argues that Rhonda failed to present expert testimony establishing a connection between her injuries and the accident. However, Dr. Oetter testified that Rhonda's symptoms were consistent with the accident. Dr. Oetter testified that Rhonda's injuries are, to a reasonable degree of medical certainty, related to the accident. While Berman points out additional testimony where Dr. Oetter wavers on the connection between the injuries and the accident, we must consider the evidence most favorable to the verdict.[2] Consequently, we conclude that Rhonda presented evidence establishing that her injuries were caused by the accident.

Next, Berman also argues that damages for lost future earning capacity are not supported by the evidence and are speculative. Berman contends that Rhonda presented no opinion from either a medical or vocational expert that she was physically unable to work as a result of the injuries sustained in the accident. Berman relies upon *Scott v. Nabours*, 156 Ind.App. 317, 320–321, 296 N.E.2d 438, 441 (1973), where we held:

> Indiana recognizes that a proper element of damage is the impairment of earning capacity which means the impairment of ability to engage in one's vocation as distinguished from loss of earnings. The concept of impaired earning capacity involves more than mere proof of permanent injury and pain. There must be evidence of probative value which relates the injury to an inability to engage in one's vocation. Like other damage issues this issue may

_____

tween her current injuries and the September 1995 accident.

**2.** In his reply brief, Berman also argues that Dr. Oetter was not aware of Rhonda's prior back problems until cross examination by Berman's counsel. Reply Brief at 6. However, the record reveals that Dr. Oetter was questioned regarding Rhonda's 1991 back problems on direct examination by Rhonda's counsel. Appellant's Appendix at 594–600. Berman also asserts that "[o]nce he was ap- prised of the pre-existing condition, Dr. Oetter could do nothing more than testify as to possibilities as to a causal connection between Rhonda's current condition and the automobile accident of September 17, 1995." Reply Brief at 6. However, even after being advised of Rhonda's 1991 injury on direct examination and after cross examination, the jury asked Dr. Oetter if Rhonda's injuries were from the accident, and Dr. Oetter responded, "yes." Appellant's Appendix at 677.

be proven by both expert and non-expert testimony. The gist of the concept is the adverse effect on vocation. The basic measure of damages for impairment of lost earning capacity is the difference between the amount which the plaintiff was capable of earning before the injury and the amount which he is capable of earning thereafter.

If there is no evidence to establish the loss of earning capacity, there can be no recovery on that issue.

■ The jury awarded $2,727,958.40 in damages to Rhonda. At the time of the accident, Rhonda was a homemaker and had no prior employment history. Rhonda presented evidence from Dr. James Jennings, an economics professor, who testified regarding Rhonda's lost earning capacity and loss of household services. Dr. Jennings testified that, if Rhonda had become employed and worked until age 65, the net wage loss would .be between $195,126.61 and $738,921.38. As for lost household services, Dr. Jennings made several calculations. First, if Rhonda only provided 1.57 hours per day of household services prior to the accident, Dr. Jennings calculated damages of $743,233.37. Rhonda told Dr. Jennings that she provided 7.5 hours per day in household services prior to the accident. Dr. Jennings calculated household losses of $1,845,939.32 based upon 7.5 hours per day of household services. If Rhonda had become employed full-time, those losses would have dropped to $1,439,043.74.

Even if we agree that Rhonda failed to present evidence that she was unable to work, the jury's verdict is sustainable based upon the loss of household services and other damages. Assuming that Rhonda would have remained a homemaker after 1995, she presented testimony that she is unable to perform many of the household tasks that she performed prior to the accident and requires significant help from her mother. Dr. Jennings calculated the damages due to loss of household services as $1,845,939.32. The jury was also instructed that, in deciding damages, they could consider the "nature and extent of injury, pain and suffering, loss of earnings or profits, impairment of earning capacity, medical and hospital expenses, aggravation of previous injury or disease, fright, humiliation or mental anguish, complete destruction or loss, repairable damage or partial destruction, to plaintiff for loss of spouse's services, negligent infliction of emotional distress, direct impact." Appellant's Appendix at 1148. Given the evidence concerning Rhonda's loss of household services, combined with her medical and hospital expenses, and pain and suffering, we cannot say that the damages awarded are outside the scope of the evidence. *See, e.g., Clancy,* 858 N.E.2d at 660 (holding that a jury's award of $10 million to a woman injured in an accident was not excessive).

■ Finally, Berman also argues that the damage award to James is excessive and unsupported by the evidence. The jury awarded $122,775.00 in damages to James. James testified that he recovered fully from his injuries within six or seven months after the time of the accident. He also testified regarding the loss of his personal property related to the reenactments, the loss of his van, and his medical bills. James also testified regarding significant changes in his life and relationship with his wife due to her injuries. Given James's personal injuries, the loss of personal property, and the loss of consortium, we cannot say that the damages awarded here are outside the scope of the evidence. *See, e.g., Clancy,* 858 N.E.2d at 665 (holding that a jury's award of $1 million to an injured woman's husband for negligent in-

fliction of emotional distress was not excessive).

For the foregoing reasons, we affirm the judgment in favor of the Cannons.

Affirmed.

RILEY, J. and FRIEDLANDER, J. concur.