**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**SHERWOOD P. HILL**
**CLINTON E. BLANCK**
Maurer Rikfin & Hill, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEE:

**JAN BARTEAU BERG**
Indianapolis, Indiana

FILED
Feb 16 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE:  THE MATTER OF THE PATERNITY          )
OF I.I.Y.                                     )
                                              )
L.M.M.,                                       )
                                              )
    Appellant-Respondent,                  )
                                              )
       vs.                             )          No. 84A01-1105-JP-236
                                              )
J.B.Y.,                                       )
                                              )
    Appellee-Petitioner.                   )

APPEAL FROM THE VIGO CIRCUIT COURT
The Honorable Robert E. Springer, Special Judge
Cause No. 84C01-0901-JP-51

**February 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

L.M.M. ("Mother") appeals from the trial court's findings of fact, conclusions of law, and judgment resolving various issues between Mother and J.B.Y. ("Father") regarding the custody, parenting time, and child support of I.I.Y ("the Child"). Although framed as several issues, Mother presents for our review the following consolidated and restated issue: Whether the trial court's findings of fact and conclusions thereon are clearly erroneous.

We affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

Mother and Father are the biological parents of the Child, who was born out of wedlock on November 22, 2008. Father filed a paternity action to legally establish his status as the Child's father. As part of that action, Father was granted parenting time pursuant to the Indiana Parenting Time Guidelines ("the Guidelines"). On November 23, 2009, Father filed a petition to modify the paternity decree regarding custody, support, and parenting time. Mother and Father negotiated a mediated settlement agreement, signed on May 3, 2010, that was approved by the trial court, in an attempt to resolve the issues between Mother and Father. The mediated settlement agreement provided, in part, that Father would be permitted to exercise additional parenting time by caring for the Child while Mother was at work and at other times when she needed daycare for the Child. The decree was further modified by the agreement to provide that Father would receive parenting time and extended visitation generally granted for a child three to four years old. In exchange, Father agreed to discontinue his previous effort to modify custody.

Although additional daycare parenting time was to start the day after the agreement

2

was reached, Father was not allowed daycare parenting time with the Child while Mother worked the following two days. During the ten-day period following that, Father was allowed daycare parenting time for two whole days and two half days. Ultimately, Mother stopped going to work and was terminated from her employment. Since that time, Mother has remained unemployed, and Father has not been permitted to exercise daycare parenting time with the Child, even when Mother was shopping, went out with friends, had a doctor's appointment, or otherwise.

With a few exceptions, Father received his weekly parenting time on Wednesday evenings for four hours and every other weekend. Mother denied Father his weekly parenting time on June 2, 2010, June 7, 2010, June 9, 2010, and June 22, 2010, each of which would have been four-hour periods. On June 11, 2010, Father could not pick up the Child at the beginning of the weekend parenting time and sent his twenty-year-old daughter to pick up the Child, an option which was available under the agreement. Mother, however, refused to allow Father's daughter, who resides with him, to pick up the Child. On another occasion when Father was unable to pick up the Child, Mother refused to allow the Child's paternal grandmother to pick him up.

Father was never allowed to exercise vacation parenting time even after providing Mother with the required advance notice. On July 18, 2010, the starting date for the first pre-arranged vacation parenting time, Father confused the pick-up time and arrived two hours late. Mother refused to answer Father's telephone calls or text messages until the following day when she texted "you missed the boat," informing Father that he could exercise his

3

normal visitation on Wednesday evening. *Tr.* at 19-20. On Wednesday evening, Father notified Mother that he planned to keep the Child until the end of the pre-arranged vacation parenting time. Mother called law enforcement to retrieve the Child from Father. The officer allowed Father to keep the Child until the end of the vacation parenting time after Father explained his position. Mother, however, insisted that a police report be filed.

Mother also denied Father parenting time for holidays. The guidelines provided that Father was to have four days of parenting time for Thanksgiving 2010. Father had given Mother advance notice that he wished to exercise vacation parenting time following his Thanksgiving parenting time. Mother denied Father parenting time for both the holiday and vacation, claiming, after the fact, that the Child was ill. The Child's eighty-one-year-old paternal grandfather drove over two days to Indiana from Florida to see the Child, but returned home without seeing him.

Mother denied Father parenting time during Christmas 2010. Father was to have parenting time with the Child the week of Christmas and Mother was to have the Child from noon Christmas Day until 9:00 p.m. that night. Father made the exchange on Christmas Day, but Mother failed to return the Child to Father that night and did not respond to telephone calls or text messages from Father. Father went to the pick-up location on the following Wednesday night, and Mother was there with the Child. Father exercised his four-hour parenting time that evening and returned to the pick-up location with the Child. When Mother did not appear, he telephoned and texted her to no avail. Father waited with the Child for an hour at the pick-up location and learned that Mother had called law enforcement

4

to have an officer dispatched to Father's house to retrieve the Child.

Mother requested that police officers accompany her to, or meet the parties at, the pick-up location. Per department policy, two officers are dispatched when the issue necessitating their presence involves a custody exchange or domestic situation. One of the officers who often witnessed the exchanges, Officer Travis Chesshir of the Terre Haute City Police Department, made no arrests at the exchanges and did not witness anyone acting out of hand. He noticed that Father had someone filming the exchanges for him. Father audiotaped and had his girlfriend videotape the exchanges after false allegations were made against him. On Father's initial visit, Mother and the Child's maternal grandmother claimed Father was filming pornographic pictures of the Child in their presence. Mother also caused criminal charges to be filed against Father. After reviewing a tape recording Father had made of the incident underlying the criminal charges, the charges against him were dismissed by the prosecutor. Ultimately, the pick-up location was moved to the police station.

On December 3, 2010, Mother filed a *pro se* request for a hearing to modify parenting time and to establish a new exchange location. Father filed a petition to modify custody, child support, and parenting time in which he also sought to have Mother found to be in contempt. Mother filed a petition for a protective order and a request for the appointment of a guardian ad litem. The trial court conducted hearings to resolve the issues raised by the parties. On the first hearing date, the trial court denied Mother's petition for protective order and her request for the appointment of a guardian ad litem.

The trial court issued its findings of fact, conclusions of law, and judgment on May 6,

2011, in which the trial court granted Father sole legal custody and primary physical custody of the Child. Mother was given parenting time and was ordered to pay child support to Father in the amount of $40 per week. The trial court found Mother to be in contempt of its orders and ordered her to pay Father $2,500 toward the attorney fees related to the contempt allegation. The pick-up location was modified to provide that the exchanges occur at each parent's house. Mother now appeals.

## DISCUSSION AND DECISION

As an initial matter, the trial court did not err, as Mother suggests, by adopting Father's proposed findings of facts and conclusions thereon. The practice of adopting a party's proposed findings is not prohibited, but the failure to prohibit such practice should not be interpreted as encouragement of the wholesale adoption of a party's proposed findings and conclusions. *Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind. Ct. App. 2006). "When the trial judge signs the findings of fact and conclusions of law, they become the court's findings of fact and conclusions of law." *Ind. Tri-City Plaza Bowl, Inc. v. Glueck's Estate*, 422 N.E.2d 670, 674 (Ind. Ct. App. 1981). The trial court is responsible for their correctness, and the findings and conclusions are not weakened because they were adopted verbatim. *Id.* In sum, wholesale adoption of one party's proposed findings is not prohibited, uncommon, or improper. *Hardebeck v. Hardebeck*, 917 N.E.2d 694, 699 (Ind. Ct. App. 2009); *In re Marriage of Nickels*, 834 N.E.2d 1091, 1095 (Ind. Ct. App. 2005).

Our inquiry on appellate review in that situation is whether such findings, adopted by the trial court, are clearly erroneous. *Piles*, 851 N.E.2d at 1012. Findings are clearly

6

erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Davis v. Davis*, 889 N.E.2d 374, 379 (Ind. Ct. App. 2008). We do not defer to conclusions of law, however, and evaluate them *de novo*. *Id.* We will not reweigh the evidence or assess witness credibility. *Breeden v. Breeden*, 678 N.E.2d 423, 425 (Ind. Ct. App. 1997).

Mother argues that the trial court's findings are not the result of the trial court's considered judgment. In particular, she supports her argument challenging the correctness of the trial court's findings by noting that the trial court cited to the statutory provisions for modification of custody in a dissolution action rather than the statutory provisions for modification of custody in a paternity action. We agree with Father's observation that both parties cited to the statutory provisions for modification of custody in a dissolution action. *See Appellant's App.* 71-73; 87. Thus, any error was invited. A party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct. *Berman v. Cannon*, 878 N.E.2d 836, 839 (Ind. Ct. App. 2007). Invited error is not subject to review by this court. *Id.* That said, "[a] judgment is clearly erroneous if it relies on an incorrect legal standard." *Columbus Med. Servs. Org., LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 94 (Ind. Ct. App. 2009). Here, the statutory citation was incorrect, but the legal standards included in both statutes are nearly identical. *See* Ind. Code §§ 31-14-13-2; 31-17-2-21. We find no error here.

Mother also challenges as clearly erroneous the trial court's findings and conclusion that a change of custody was in the best interest of the Child. She supports her argument by

contending that there was no mention of her relationship with the Child in the findings.

The issue before the trial court, however, was Mother's alleged interference with and subversion of Father's relationship with the Child and if that behavior was in the best interest of the Child. The trial court's findings state the conclusion that it is in the Child's best interest to have meaningful and frequent contact with each parent and that Father was the parent most likely to ensure that the Child's best interests in that regard were met. *Appellant's App*. at 20. This finding supports the inference that the trial court found Mother's relationship with the Child to be a good one, also worthy of frequent and meaningful contact. There was no allegation that Father was interfering with or somehow limiting Mother's relationship with the Child. Mother's poor relationship with Father was undermining the best interests of the Child. We find no error here as the inclusion of detailed findings regarding Mother's relationship with the Child were not necessary to resolve the material issue before the trial court, i.e., determining how best to ensure that the Child had a relationship with each parent.

Mother also claims that the findings of fact and conclusions of law are clearly erroneous in general because of the inclusion of the following language in the findings:

> . . . The open courtroom is no place to "clarify" the rights, privileges and times of the Indiana Parenting Time Guidelines.

*Id*. at 15. Mother argues that the trial court's inclusion of that language in the finding "seems to be at odds with the letter and spirit of the Guildelines." *Appellant's Br*. at 22. We disagree with her characterization. Many of the disputes before the trial court between the parties were precipitated by Mother's lack of knowledge of the relevant provisions of the

Guidelines and the mediated settlement agreement. Mother testified to as much at the hearing. Mother's counsel devoted much time (the trial court mentioned 20 to 30 minutes) during Mother's testimony explaining to Mother the parameters of the Guidelines and mediated settlement agreement and her responsibility to conform her behavior in order to be in compliance. While the language of the finding may cast Mother in an unfavorable light and may displease her, the finding is not clearly erroneous.

Likewise, Mother's characterization distorts the context of the cited language by claiming that the courtroom is the very place where parenting time rights are clarified and determined. In context, the language was intended to illustrate Mother's failure to familiarize herself with the Guidelines even when faced with a hearing to determine if she had been in compliance with them and the terms of the mediated settlement agreement. The issue was her failure to have a basic understanding of the Guidelines, not the trial court's need to resolve a gray area or unforeseen conflict, as the Guidelines and mediated settlement agreement applied to this co-parenting situation.

Mother's final general attack on the trial court's findings of fact and conclusions thereon is that the findings include references to the fact that a witness testified to, stated, indicated, told, admitted, or asked something. Mother asserts that the "mere recitations of witness testimony and opinions are not true findings." *Appellant's Br*. at 23 (citing *Garriott v. Peters*, 878 N.E.2d 431, 437-38 (Ind. Ct. App. 2007)). While we agree with Mother's statement of the law, we disagree with her argument that such occurred here. The trial court made a particular finding and supported that finding with occasional references to testimony.

9

That tack does not render the findings clearly erroneous because the findings as written do assist us in our review. We find no error here.

Mother alleges that the trial court's finding and conclusion that there had been a substantial change in the Child's interaction and interrelationship with Father and the Child's half-sisters, and that there had been a substantial change in Father's wishes as to which parent should have primary physical custody of the Child, are clearly erroneous. Indiana Code section 31-14-13-6 provides that a trial court may not modify a child custody order unless modification is in the best interest of the child and there is a substantial change in at least one of the statutory factors to be considered. The factors relied upon by the trial court were a substantial change in the wishes of the Child's parents and the interaction and interrelationship with the Child's siblings. *See* Ind. Code § 31-14-13-2(2) & (4).

The trial court found that Father's position regarding which parent should have primary physical custody of the Child had changed. Mother argues that there had not been a substantial change in Father's position as he had a pattern of challenging Mother's custody and then changing his mind. We view Mother's argument in this regard as a request to reweigh the evidence, a task we may not undertake on appeal. *See Breeden*, 678 N.E.2d at 425.

Looking at the evidence that supports the findings, the record reveals that prior to the entry of the mediated settlement agreement, Father was unhappy with Mother having primary physical custody of the Child because his parenting time with the Child was limited by Mother. Father agreed that primary physical custody could remain with Mother as long as

10

many more opportunities for parenting time were provided to him. These terms were negotiated and set out in the mediated settlement agreement. When Mother failed to comply with the terms of the mediated settlement agreement and the Guidelines, Father changed his position on Mother's continued primary physical custody of the Child.

To the extent that Mother asserts error by claiming that the trial court's findings fail to address Mother's wishes regarding the custody of the Child, this argument is unpersuasive. The trial court as finder of fact was presented with Mother's wishes and Father's wishes. Specific findings acknowledging Mother's desire for continued primary physical custody of the Child were unnecessary to support the judgment. The trial court was required to make findings to support its decision that a substantial change had occurred and that a modification of custody was warranted. We find that this finding and conclusion is supported by the record before us.

Mother also alleges that the trial court erred in its findings and conclusion that there had been a substantial change in the Child's interaction and interrelationships with Father and the Child's half-sisters. Mother's argument that the evidence was insufficient to support this finding and conclusion is another attempt to have us reweigh the evidence. We will not reweigh the evidence or reassess witness credibility on appeal. *See id.*

Father's daughters from a previous marriage interacted with the Child and assisted Father in caring for the Child. Per the mediated settlement agreement, Father and his daughters would have had more opportunities over extended periods of time to bond and interact with the Child. Mother refused to let Father's twenty-year-old daughter pick up the

11

Child at transition time, and denied Father the opportunity to exercise vacation parenting time and parenting time during holidays when the Child could have interacted with Father's family for longer periods of time.

During exchanges, Mother initially requested the presence of law enforcement, and later the exchanges were moved to the local police station. Mother often told the Child that "it's okay; mommy loves you, but you have to go. I'll be back in a couple of hours, but you've got to go." *Tr.* at 36. Mother pursued criminal charges against Father that were later dropped. The evidence supports the trial court's findings and conclusions here.

Mother contends that the trial court erred by relying on this court's opinion in *In re Marriage of Ferguson*, 519 N.E.2d 735 (Ind. Ct. App. 1988). In *Ferguson*, a panel of this court affirmed the trial court's decision to award custody of the parties' children to the mother. 519 N.E.2d at 736-37. At issue was language in the trial court's order which illustrated father's acts to undermine the children's relationship with their mother. *Id.* Father claimed that the award of custody to mother was affected in an attempt to punish father for such behavior. *Id.* While agreeing with father's premise that custody awards should not be used to punish a parent, we disagreed that the same had happened there. *Id.* The language used in the order merely reflected the trial court's rationale in awarding custody, and focused appropriately on the best interest of the children. *Id.*

Although the relationship between Mother and Father does not fall within a dissolution context, as was the case in *Ferguson*, the issue involved is quite similar. In fact, later in her brief, Mother cites to *Ferguson* in support of her argument that the trial court's

modification of custody was used as a means of punishing Mother for her non-compliance with the Guidelines and mediated settlement agreement. We do not find the trial court's use of the *Ferguson* holding to be clearly erroneous. Neither do we find the trial court's conclusion to award primary physical custody of the Child to Father to be punitive as to Mother. The trial court explained in its findings and conclusions that, in terms of the best interests of the Child, the Child should have meaningful and frequent contact with both parents, and that this objective would more likely be achieved if Father was the primary physical custodian of the Child. No error has been established here.

Mother also challenges the trial court's findings and conclusion that the change in custody was in the Child's best interests. She contends that the change in custody was merely better for Father, i.e., the trial court erroneously focused on Father's best interests. Indiana Code section 31-14-13-6 provides that a trial court may not modify a child custody order unless modification is in the best interest of the child and there is a substantial change in at least one of the statutory factors to be considered. We have already determined that the trial court properly found a substantial change in two of the statutory factors to be considered. Mother's argument here is another invitation to reweigh the evidence, a task we will not undertake. *See Breeden*, 678 N.E.2d at 425. The evidence supports the trial court's findings and conclusion that the Child's best interests would be served by frequent and meaningful contact with both parents. Mother's history of unilaterally denying Father his parenting time, and Father's history of attempting to abide by the mediated settlement

agreement and the Guidelines, supports the conclusion that Father should be the primary physical custodian of the Child.

Mother contends that the trial court erred by finding Mother in contempt of court. Mother claims that the basis of the contempt finding was that she was in violation of the terms of the mediated settlement agreement, and that such was not an order of the court. Mother concludes that the trial court's finding is clearly erroneous.

"Whether a party is in contempt of court is a matter left to the discretion of the trial court." *Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997). We will reverse a contempt finding only if we find that it is against the logic and effect of the facts and circumstances before the court and any reasonable inferences arising therefrom. *Id*. "Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt." *Id*. Even if erroneous, the order must be obeyed until it is reversed on appeal, the remedy a party should use to challenge the order rather than disobedience, as such is contempt. *Id*.

Mother's argument is based on the premise that the mediated settlement agreement was not an order of the court, and thus, she should not have been found to be in contempt. The mediated settlement agreement was conditioned upon the approval by the trial court of its terms. *Appellant's App*. at 34 ("This Agreement is expressly conditioned upon its approval by the Court."). The mediated settlement agreement also provides that Mother and Father "warrant and represent to the other that he or she fully understands all of the terms, . . . conditions, . . .provisions and obligations," under the agreement. *Id*. Although the

agreement lacked the use of the word "order," it had the same effect. It was presented to the court for approval, was approved, and became part of the record in this matter.

Mother did not present her argument that the mediated settlement agreement was not an order to the trial court. "Generally, a party waives appellate review of an argument if that party did not present that argument before the trial court." *City of Gary v. McCrady*, 851 N.E.2d 359, 364 (Ind. Ct. App. 2006). Waiver notwithstanding, there was ample evidence in the record that: 1) Mother knew that she was compelled to comply with the terms of the mediated settlement agreement (as was Father); and 2) willfully violated the mediated settlement agreement. No warning was necessary as she agreed to be bound by the agreement. We find no error here.

Mother claims that her request for modification of the parenting time schedule should be remanded to the trial court for further consideration. Mother presented evidence in support that she had sought treatment for the Child due to the emotional distress from visiting with Father, and had sought the assistance of a play therapist because of perceived transitioning issues. Mother enrolled the Child in a program to assist him with delayed speech issues without consulting Father. A developmental therapist testified that the Child's development and behavior could have been affected by the accelerated parenting time agreed to by the parties. Mother did not allow the extended parenting time provided for by the mediated settlement agreement to take place. Father claims, on the other hand, that he did not observe the Child being emotionally distressed, observed him playing appropriately for

15

his age, but agreed that if the Child needed speech therapy, he would continue to do so now that he was aware of the Child's participation in the program.

Although, not explicitly ruling on Mother's petition, by granting Father's request for a change in custody, the trial court in effect denied Mother's petition. Because we find no error in the trial court's conclusion that a change of custody was necessary, we deny Mother's request to remand for consideration of her petition to modify the parenting time schedule.

We do find that Mother's contention that the trial court abused its discretion in its child support order is persuasive. Decisions regarding child support are left to the sound discretion of the trial court. *Tatum v. Tatum*, 773 N.E.2d 371, 373 (Ind. Ct. App. 2002). We will not disturb a trial court's order modifying child support absent an abuse of discretion or a determination that is contrary to law. *Id*. We do not weigh the evidence or judge the credibility or witnesses, but consider the evidence most favorable to the judgment along with the reasonable inferences to be drawn therefrom. *Id*.

Here, after awarding primary physical custody of the Child to Father, the trial court ordered the cessation of the payment of child support from Father to Mother and found Father to be current in his child support obligation. The trial court noted that Mother was unemployed and had been so for over a year. The trial court then ordered Mother to begin paying Father child support in the amount of $40 per week. The trial court further ordered Mother to notify Father upon her successful employment so that a re-calculation of child support could be made.

16

Indiana Child Support Guideline 2 states:

When a parent has extremely low income the amount of child support recommended by use of the Guidelines should be carefully scrutinized. The court should consider the obligor's income and living expenses to determine the maximum amount of child support that can reasonably be ordered without denying the obligor the means for self-support at a minimum subsistence level.

Here, there was a lack of evidence that Mother was employed or a finding that she was underemployed. The amount set by the trial court did not reflect a consideration of appropriate information germane to the issue of child support. Absent this evidence, the trial court was without authority to enter a judgment for an amount without consideration of the supporting facts relevant to the determination. *See Tatum*, 773 N.E.2d at 374 (judgment fails to contain finding or conclusion indicative of manner in which support award was determined). Therefore, we reverse the trial court's child support award and remand with instructions that the trial court consider the relevant evidence when arriving at the child support award.

Affirmed in part, reversed in part and remanded.

BARNES, J., and BRADFORD, J., concur.

17