Jeffrey D. HOLLINS, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 10A05–0210–PC–496.

Court of Appeals of Indiana.

May 8, 2003.

Transfer Denied July 31, 2003.

Susan K. Carpenter, Public Defender of Indiana, Victoria Christ, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Jeffrey D. Hollins appeals the denial of his petition for post-conviction relief after having been convicted by a jury on three counts: attempted murder, a class A felony; robbery, a class B felony; and burglary, a class A felony.

We affirm.

### ISSUES

1. Whether the post-conviction court erred in not finding that the trial court's instructions to the jury on attempted murder and accomplice liability constituted fundamental error warranting post-conviction relief.

2. Whether the post-conviction court erred in not finding that Hollins' sentence exceeded that allowed by statute.

3. Whether the post-conviction court erred in not finding that Hollins was denied his right to effective assistance of counsel when trial counsel and appellate counsel failed to argue for proper instructions and sentencing.

### FACTS

In our decision on Hollins' direct appeal, we summarized the general facts in Hollins' case as follows:

On March 18, 1995, Hollins and several of his friends, including Anthony and Maurice Thompson, concocted a plan to burglarize the residence belonging to John Burton, the Thompsons' former step-father. Maurice Thompson who was still living with Burton agreed to leave open a bedroom window in order to allow the others to enter the home. That evening Hollins and Anthony Thompson entered through the window. Burton was present in the home when the two arrived. As Burton sat in a downstairs living room, Hollins and Thompson approached him from behind and began beating him on the head with a crow bar. Burton fell to the floor and eventually was rendered unconscious. Hollins then relieved Burton of his wallet, keys and a .38 caliber handgun. Leaving Burton at the foot of the stairs, Hollins and Thompson proceeded upstairs and began opening a safe using the keys obtained from Burton. Meanwhile Burton regained consciousness and attempted to raise himself from the floor. In the process he made a slight noise which attracted Thompson's and Hollins's attention. One of the men returned to the top of the stairs, pointed a gun at Burton and fired. The bullet entered Burton's outstretched arm, barely missing his chest. The bullet traveled to his chest where it was later removed. Hollins and Thompson removed cash and valuables from the safe, then made their escape through the bedroom window. Burton, still barely conscious, was able to drag himself to the door and crawl outside where he obtained help from a neighbor.

*Hollins v. State*, No. 10A05–9601–CR–7, 681 N.E.2d 799 (Ind.Ct.App. July 3, 1997).

Hollins and Anthony Thompson ("Anthony") were tried jointly; each was charged with the same three offenses. At trial, evidence was heard that Dedrick Bland, Michael Smith, and Maurice Thompson ("Maurice") were with Hollins and Anthony immediately before and after the break-in. Bland testified that Anthony "said that [Hollins] shot him" and that Hollins did not respond to the statement. (T.R.[1] 970). Smith testified that when Anthony and Hollins came from Burton's house, Anthony "was saying . . . you didn't have to shoot him and then [Hollins] said I didn't mean to it just happened. . . ." (T.R. 1027). Smith also testified that Hollins told him he "picked up the gun and then the old man kicked [Hollins] and then [Hollins] shot him." (T.R. 1030). Maurice testified that Hollins had "said that he shot" Burton. (T.R. 863). Anthony testified that after he and Hollins entered the house and beat Burton, they separated; according to Anthony, he was in another room when he heard a gunshot, and Hollins "said I think I shot him. I think he is dead. . . ." (T.R. 1097). At the hospital immediately after the beating, Burton told police that he did not know who shot him. The officer testified that when asked if it was possible that Anthony was one of the two men, Burton said "he couldn't tell for sure." (T.R. 1080). Burton's ex-wife, the mother of Anthony and Maurice, testified that when she visited Burton in the hospital on Sunday (the attack was on Friday night), he told her he did not know who shot him. At trial, Burton testified that it was Anthony who had shot him. Thus, there was conflicting evidence as to the whether it was Hollins or Anthony who shot Burton.

The trial court instructed the jury as to both attempted murder and accomplice liability. The attempted murder instruction read as follows:

---

1. "T.R." refers to the trial record.

The crime of Attempted Murder as charged in Count I of the Information is defined by statute as follows:

Murder: A person who knowingly or intentionally kills another human being.

Attempt: A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engaged in conduct that constitutes a substantial step toward the commission of the crime.

To convict the Defendant of Attempted Murder as charged in Count I of the Information, the State of Indiana must have proved each of the following elements:

The Defendant—

1. knowingly or intentionally
2. engaged in the following conduct: shot JOHN BURTON with the intent to kill him,
3. the conduct was a substantial step towards the commission of the crime of murder.

If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant GUILTY of Attempted Murder as charged in Count I of the Information.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant NOT GUILTY of Attempted Murder as charged in Count I of the Information.

(T.R. 39). The trial court further instructed the jury about the "specific intent" required for the crime of attempted murder as follows:

A specific intent to kill must be proved by the State of Indiana in order to convict the Defendant of Attempted Murder. The State of Indiana must prove beyond a reasonable doubt, that the Defendant, with intent to kill John Burton, engaged in conduct which was a substantial step toward such attempted killing.

If the State of Indiana fails to prove beyond a reasonable doubt that the Defendant acted with a specific intent to kill John Burton, you must find the Defendant not guilty of Attempted Murder.

(T.R. 45). Hollins' counsel did not object to either of the foregoing instructions.

As indicated, the trial court also instructed the jury as to accomplice liability, providing the following instruction:

"Aiding, inducing or causing an offense" is defined by statute as follows:

(a) A person who *knowingly or* intentionally aids, induces, or causes another person to commit an offense, commits that offense, even if the other person:

(1) Has not been prosecuted for the offense;

(2) Has not been convicted of the offense; or

(3) Has been acquitted of the offense.

A person is responsible for the actions of another person when, either before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime. To aid is to knowingly support, help, or assist in the commission of the crime.

In order to be held responsible for the actions of another, he need only have knowledge that he is *helping in the commission of a crime*, and commit some act in furtherance of the crime. He does not have to personally participate in each element of the crime, nor does he have to be present when the crime is committed.

The presence of a person at the scene of a crime, failure to oppose the commission of a crime, companionship with the person committing the crime, and conduct before and after the crime may be

considered by the jury in determining whether aiding may be inferred from the evidence presented.

(T.R. 42) (emphasis added).

Hollins' counsel tendered, and the trial court gave, the following instruction:

Mere presence or the failure to oppose the commission of a crime standing alone is not sufficient to impose criminal culpability upon a person unless a duty to protect exists.

There must be evidence that the individual intended, by his own actions, to cause or facilitate the crime and that there exists some affirmative conduct by the individual which an inference of a common design or purpose to affect the commission of the crime can be drawn.

(T.R. 46). Hollins' counsel also tendered, but the trial court refused, the following instruction:

In order to find the Defendant guilty of aiding in the commission of a crime, there must be some affirmative conduct, either in the form of acts or words, from which the reasonable inference of a common design or purpose to effect the commission of the crime might be drawn. In order to find the Defendant guilty, you must find that he intended, by his own actions, to cause or facilitate the commission of the crime by the principal offender.

You may consider the Defendant's failure to oppose the commission of a crime only when the Defendant owes a duty to protect the victim of the crime such as a parent owes a child.

(T.R. 87).

The jury convicted Hollins as charged. At the sentencing hearing, the trial court heard that Burton's "arm that was shot" was "now useless" and would "likely ... have to be amputated"; and that Burton still had "a hole in his skull" and was suffering memory problems that he felt were "directly related to his being beaten." (T.R. 1322). The trial court considered "the nature and circumstances of the crimes committed, being crimes of violence inflicted specifically upon a gentleman who was 69 years of age ... while watching television in the privacy of his own home," (T.R. 1372), and Burton's evidence of his continued suffering from the beating. The trial court found aggravating circumstances that warranted an enhanced sentence, specifically that Hollins had recently violated the conditions of his probation; Hollins' history of criminal delinquent activity; Hollins' dire need of treatment that could best be provided by commitment to a penal facility; and that the victim of the crime was 69 years old. The trial court also noted that the victim had suffered "excruciating pain" from "being struck with a crow bar." (T.R. 1377). The trial court sentenced Hollins to serve thirty-five years for attempted murder, ten years for robbery, and thirty-five years for burglary. It ordered the sentences to be served consecutively.

On direct appeal, Hollins' appellate counsel (who was not Hollins' trial attorney), raised two issues: whether Hollins' convictions for attempted murder and class A burglary violated double jeopardy, and whether Hollins was entitled to a lesser-included-offense instruction on theft or receiving stolen property. We rejected both his arguments and affirmed his convictions.

Hollins later filed a petition for post-conviction relief. With new counsel, Hollins has alleged fundamental error in that he was merely an accomplice and the jury had not been properly instructed that the accomplice had to be acting with the specific intent to kill, citing *Bethel v. State*, 730 N.E.2d 1242 (Ind.2000), and *Williams v. State*, 737 N.E.2d 734 (Ind.2000). Hol-

lins further alleged that his sentence violated IND.CODE § 35–50–1–2, and that his trial and appellate counsel were ineffective for having failed to raise these matters.

The post-conviction court held a hearing on Hollins' petition over the course of two days in July of 2002, and took the matter under advisement. On September 4, 2002, the trial court denied the petition. Essentially, the post-conviction court rejected Hollins' "premise" that he "was merely an accessory to the crimes committed." (App. 156). It cited evidence that Hollins was "the one who shot Burton," *id.*, and found *Bethel* and *Williams* inapposite. The post-conviction court also found that because "Burton suffered serious bodily injury," and the record indicated that the trial court had considered that fact, consecutive sentencing was authorized by I.C. § 35–50–5–1. "Having determined that there was no error" as to these issues, the post-conviction court further found that "trial and appellate counsel could not be ineffective for their failure to raise them." (App. 159).

## DECISION

■ The petitioner for post-conviction relief "has the burden of establishing his grounds for relief by a preponderance of the evidence." Ind. Post–Conviction Rule 1 § 5. When a petitioner appeals from the denial of post-conviction relief, he "appeals from a negative judgment, and he must convince the appellate court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). "In other words, '[t]his Court will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclu-

sion.'" *Id.* at 391–92 (quoting *Miller v. State*, 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied*, 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679).

### 1. *Instructions*

■ Hollins reminds us of the conflicting evidence and that despite there having been evidence that he shot Burton, there was also evidence that Thompson shot Burton. In *Bethel v. State*, 730 N.E.2d at 1246, our supreme court held that consistent with *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind.1991),

> in order to establish that a defendant aided, induced, or caused an accomplice to commit attempted murder, the State must prove that the defendant, with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused his accomplice to commit the crime of attempted murder.

The State concedes that the accomplice liability instructions given by the trial court were flawed because they did not explicitly so inform the jury. Nevertheless, the State argues that there is no fundamental error here because Hollins' intent was not at issue at trial; rather, his defense was that he was not present at the scene. We agree with the State.

Hollins' trial defense was that he had never entered Burton's house but remained outside the open window; thus, he could not have been the person who shot Burton. Hollins' counsel never wavered in this defense throughout the course of the trial. He vigorously cross-examined the State's witnesses, challenging whether there was any physical evidence placing Hollins inside the residence.

In his opening argument, Hollins' counsel asserted that Hollins "never entered the house" and that there was "no evidence whatsoever" that Hollins was "inside the residence" that night. (T.R. 433, 434).

Hollins' counsel asked the officer who initially responded to the scene whether he had "inspect[ed] the perimeter of the house." Hollins' counsel elicited the investigating officer's admission that there was "no piece of physical evidence" to prove that Hollins was "in that home on that night." (T.R. 725). Hollins' counsel asked Burton whether it was possible that Anthony was "by himself" throughout the attack, thus seeking the inference that only Anthony was inside. (T.R. 811). His counsel also asked Bland to confirm that he "never saw who went into" Burton's house. (T.R. 998). After the State rested its case in chief, Hollins moved for a directed verdict, arguing a lack of evidence "to place Mr. Hollins inside the residence that night." (T.R. 1060). The motion was denied.

During Anthony's testimony, Hollins' counsel noted that there was "not one footprint of Jeffrey Hollins" in Burton's house and asked whether Anthony had not entered "the house by [him]self." (T.R. 1034, 1037). Counsel further questioned Anthony as to whether after the shot Hollins had "holler[ed] at you from the window" and whether Anthony had handed things "out there to him." (T.R. 1040, 1041). In his closing argument, Hollins' counsel asked the jury to consider the physical evidence as to who was "inside that house on that night" and whether the evidence might not indicate that Hollins was "outside the window" during the attack and burglary. (T.R. 1221, 1228).

■ Thus, Hollins consistently asserted that he never entered Burton's house that night. In *Swallows v. State*, 674 N.E.2d 1317, 1318 (Ind.1996), the defendant's defense at trial was "to put identity at issue," and the intent of the defendant "was not in issue." In such a case, "where only identity is challenged and intent is not in dispute," our supreme court held that "failure to instruct on specific intent does not constitute fundamental error" and post-conviction relief is not warranted. *Id. See also Blanche v. State*, 690 N.E.2d 709, 713 (no fundamental error where "the primary issue at trial was not the defendant's intent, but the defendant's identity"). Subsequent to *Bethel*, the law still remains that an attempted murder conviction will not be vacated "despite clear *Spradlin* error" when "the intent of the perpetrator was not a central issue at trial." *Williams*, 737 N.E.2d at 737. Given that Hollins maintained he was not inside Burton's house during the attack, his intent at the time of Burton's shooting was not at issue. Therefore, we find no fundamental error here.

### 2. *Sentence*

■ At the time of the crimes for which Hollins was convicted, March 18, 1995, the statute regarding consecutive sentences provided that the court

> may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 [habitual offenders] and IC 35–50–2–10 [habitual substance offenders], to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

I.C. § 35–50–1–2(a).

Hollins was convicted of attempted murder, an A felony; robbery while armed with a deadly weapon, a B felony; and burglary as an A felony because it resulted in bodily injury to Burton.[2] The trial court found that aggravating circumstances outweighed mitigating circumstances and sentenced Hollins to thirty-five years (ten years longer than the presumptive term) for each of the A felonies; however, it sentenced Hollins to the presumptive ten-year term for class B felony robbery.[3] Ordered to be served consecutively, the sentences total eighty years.

Hollins reminds us that neither his attempted murder charge nor his burglary charge alleged "serious bodily injury" to Burton.[4] Further, he claims that the trial court did not enhance his sentence for either the attempted murder or the burglary based on the felony having resulted in serious bodily injury. Thus, he argues, he was not convicted of a felony for which he received "an enhanced penalty because the felony resulted in *serious* bodily injury," and, therefore, the statute limits "the total of the consecutive terms of imprisonment" to the forty year presumptive term for murder.[5] I.C. § 35–50–1–2(b) (emphasis added). Hollins claims that his sentence is "not governed by *Greer [v. State*, 684 N.E.2d 1140 (Ind.1997) ]," and his sentence "must be revised" to not exceed forty years. Hollins' Br. at 23.

The State responds that *Greer* provides the necessary analysis and that pursuant to that analysis, his convictions for attempted murder and burglary "fall within the exception language of the statute and

can be served consecutively." State's Br. at 14. Moreover, the State contends, because the robbery conviction was not enhanced, the statute simply imposes a formulaic cap *if* the sentence for that non-enhanced conviction sentence were ordered to be served consecutive to another non-enhanced conviction sentence. Because that did not occur here, the State concludes, Hollins' sentence does not violate the statute. Again, we agree with the State.

In *Greer*, our supreme court described the necessary analysis for the application of the sentencing statute quoted above. In the first step, we determine the presumptive sentence for a felony that is one class higher than the most serious felony of which the defendant was convicted. Hollins was convicted of two class A felonies. The only more serious felony is murder, for which the presumptive sentence in 1995 was forty years. According to *Greer*, forty years would then be the maximum term of imprisonment that Hollins could be sentenced to for his convictions out of this episode of criminal conduct "except for" any felony conviction for which he received "an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury." 684 N.E.2d at 1142 (quoting I.C. § 35–50–1–2(a)).

In its second step, *Greer* requires "analyzing whether any of the convictions for which defendant received consecutive sentences" are "convictions for which defendant (i) received an enhanced penalty be-

---

**2.** *See* I.C. §§ 35–42–1–1 and 35–41–5–1(a); 35–42–5–1; and 35–43–2–1.

**3.** *See* I.C. §§ 35–50–2–4 and 35–50–2–5.

**4.** The State charged Hollins with burglary as an A felony because he broke into Burton's home with the intent of committing theft and

"bodily injury to John Burton" resulted. (T.R. 9).

**5.** *Smith v. State*, 675 N.E.2d 693, 697 (Ind. 1996), held that the presumptive sentence for murder for the period encompassing March 18, 1995, was forty years.

cause the felony resulted in serious bodily injury, and, if so, (ii) the defendant knowingly or intentionally caused serous bodily injury." *Id.* In *Greer*, the defendant received enhanced sentences for three attempted murder and one criminal deviate conduct convictions. The court cited the "definition of 'serious bodily injury,'" which is "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." *Id.* (quoting I.C. § 35-41-1-25). It then noted that each attempted murder victim had been shot repeatedly. The *Greer* sentencing order did not expressly state that "the convictions in question were enhanced *because* the felonies resulted in serious bodily injury." 684 N.E.2d at 1143 (emphasis in original). However, our supreme court noted that the trial court had "clearly indicated that among the reasons for imposing enhanced and consecutive sentences was 'the seriousness of the totality of these crimes,'" and concluded that it had "little doubt in concluding that this was a reference to the serious bodily injuries inflicted." *Id.*

Here, Hollins received enhanced sentences for two of the offenses for which he was convicted: attempted murder and burglary. At the outset of the trial, Hollins was willing to stipulate to the trial court that "Burton sustained bodily injury on March 18, 1995 in the form of multiple trauma to his head and other parts of his body, as well as a single gunshot wound...." (T.R. 443). Nevertheless, the trial court heard multiple references to the seriousness of Burton's injuries. The man who discovered Burton after the attack was his nephew but "didn't even know who it was" because of the horrific nature of the injuries, and said it "looked like someone had took a bucket of blood and just poured it all over him." (T.R. 473, 480). The responding officer testified that Burton was "bloody beyond recognition" at the scene and that he "didn't think [Burton] was going to live." (T.R. 446, 452). When the investigating officer found "a massive amount of blood" at Burton's house, and when he first saw Burton at the hospital, he was "very concerned ... whether he would live or not." (T.R. 504, 529). Burton testified that he felt "the most excruciating pain [he] ever felt" during the beating and had "come to" in a "pool of blood." (T.R. 778, 763). Burton testified that he still had "a big caved in spot in [his] skull" from the beating. (T.R. 777).

In the statute, the bodily injury definition specifies "permanent disfigurement," and the "hole in [Burton's] skull" was a fact presented at sentencing and would qualify as a permanent disfigurement. (T.R. 1322). The definition also includes the impairment of a bodily member, and testimony that Burton's arm was "useless" and would "likely ... have to be amputated" was heard at the sentencing hearing and would qualify as an impairment of a bodily member. *Id.* Moreover, the definition also includes "extreme pain," and the trial court heard evidence of and specifically cited the "excruciating pain" that Burton had suffered. (T.R. 1377). Finally, the trial court stated that it had considered that Hollins' convictions were for "crimes of violence inflicted upon a gentleman who was 69 years of age" as well as the evidence of Burton's continued suffering from the attack. (T.R. 1372).

Based upon the foregoing facts, although the trial court here did not expressly state that Hollins' sentences for his convictions of attempted murder and burglary were enhanced because the felonies resulted in serious bodily injury, our review of the trial court's statements at sentencing leaves us with no doubt that it did

enhance Hollins' sentences because of the serious bodily injuries inflicted upon Burton. *See Greer,* 684 N.E.2d at 1143. Therefore, we find that the post-conviction court's decision that Hollins was not entitled to post-conviction relief on this issue is not contrary to law.

### 3. *Ineffective Assistance*

A claim of ineffective assistance of counsel must satisfy two components. *McCary,* 761 N.E.2d at 392 (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). First, the defendant must show "deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, the defendant "must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.*

■■ Hollins first argues that his trial counsel was ineffective for failing to object to the instructions as not advising the jury that to convict him on the basis of accomplice liability, the State had to prove that he had the specific intent that a killing occur. To prove deficient performance requires a showing of "errors serious enough to demonstrate that counsel was not functioning as guaranteed by the Sixth Amendment." *Williams v. State,* 771 N.E.2d 70, 73 (Ind.2002). "Few points of law are as clearly established as the principle that '[t]actical or strategic decisions will not support a claim of ineffective assistance.'" *McCary,* 761 N.E.2d at 392 (quoting *Sparks v. State,* 499 N.E.2d 738, 739 (Ind. 1986)). We afford great deference to counsel's discretion to choose strategy and tactics, and even the best defense attor-

neys may disagree on the ideal strategy or most effective approach in any given case. *Id.* (citing *Strickland,* 466 U.S. at 689–90, 104 S.Ct. 2052).

Here, Hollins had claimed he was never in Burton's house that night and maintained said posture throughout the trial. Indeed, trial counsel testified at the post-conviction hearing that Hollins' defense always was "that he was outside the window." (P.C.R. Tr. 27). Based upon the lack of physical evidence placing Hollins inside and that the only direct evidence of his presence was the testimony of his co-defendant Anthony, who was identified as the shooter by Burton, it seems a reasonable trial strategy for counsel not to have focused on the potential accomplice liability of his client. Therefore, we do not find trial counsel's performance in this regard to show errors serious enough to demonstrate that he was not functioning as guaranteed by the Sixth Amendment. *Williams,* 771 N.E.2d at 73.

■ Hollins also argues that trial counsel and appellate counsel were ineffective for failing to raise the statutory limitation as to consecutive sentences. We have found that the sentencing was consistent with the statute in place at the time. Therefore, this argument also must fail because Hollins cannot demonstrate the reasonable probability that but for this alleged failure, the result of the sentencing would have been different. *See McCary,* 761 N.E.2d at 392.

We affirm.

NAJAM and VAIDIK, JJ., concur.