**STATE of Indiana, Appellant–Plaintiff,**

v.

**Harold LEWIS, Appellee–Defendant.**

**No. 72A05–0610–CR–564.**

Court of Appeals of Indiana.

April 3, 2008.

---

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Bradley A. Johnson, Dove & Johnson, North Vernon, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

On interlocutory appeal, the State challenges the granting of a motion in limine filed by defendant Harold Lewis. The State asserts that in this trial on a charge of criminal recklessness resulting in serious bodily injury, the State should be permitted to present evidence of the victim's

death, which occurred after Lewis allegedly shot him. We reverse and remand.

## Facts and Procedural History

According to the probable cause affidavit, on April 22, 2004, Indiana State Police Officer Scott Stewart and other officers were called to the scene of a reported shooting at a residence in Austin, Indiana. Upon arrival, they found Lewis, a shotgun, and Dennis Hensley, who was lying in a pool of blood with an "apparent and obvious gunshot wound to his right leg." App. at 10.

On April 23, 2004, the Scott County prosecutor filed an information charging Lewis with aggravated battery as a class B felony, criminal recklessness as a class C felony, and battery as a class A misdemeanor. *Id.* at 8–9. The prosecutor opted to submit the case to a grand jury. On June 4, 2004, the grand jury indicted Lewis of class C felony criminal recklessness, and the Scott Circuit Court accepted the true bill. *Id.* at 12. The case was transferred to the Scott Superior Court on February 23, 2005, and on July 7, 2006, the case was consolidated with other charges concerning a related incident. *Id.* at 12, 17–18.

A jury trial was scheduled for September 19, 2006. That day, jurors were sworn, and Lewis filed two motions in limine. The relevant motion stated:

> Comes now [Lewis], by counsel, and respectfully requests that the State of Indiana, its Prosecuting Attorney, Deputy Prosecuting Attorney and any state witnesses, be instructed not to mention, or refer in any way that Dennis Hensley died following the shooting. Reference to such evidence would be highly prejudicial to [Lewis's] case, and is irrelevant to the charges made in this cause.

*Id.* at 28. Vigorous argument on the motion ensued.

[Defense counsel]: There's no doubt it's a serious bodily injury, but the fact that there was a death as a result is simply highly prejudicial to the defendant and it's just not relevant to the case. . . .

[The State]: Now the State has a burden to prove the elements beyond a reasonable doubt and since the serious bodily injury by its definition includes death (INAUDIBLE) . . . we would find that we can't even prove one of our elements. We wouldn't be able to discuss that in its entirety. . . .

[The State]: . . . this completes the story. And if you look at [Indiana Evidence Rule] 403, 403 says we should not bring in information that would confuse or mislead the jury and we are going to mislead the jury if they just keep looking around for Dennis Hensley to come, because (INAUDIBLE) to be here today and that's part of the story and it may be part that the Defense doesn't like, but it is part of the story. We'll mislead the jury if they keep wondering where is Mr. Hensley, why isn't he here to testify . . . if they're not allowed to know that that serious bodily injury resulted in death, that injury was he was shot. All that information comes in, Judge, under the fact that . . . not misleading the jury. It is relevant and it doesn't cause prejudice and we need this to prove that the wound caused serious bodily injury. You could get shot in the leg and it doesn't necessarily mean you're going to die. . . .

[Defense Counsel]: . . . My word was that you don't need to call medical experts to get that autopsy report in. If you have medical records you can get them in, I don't have a problem with that and I never have and I won't. . . .
[T]he fact that Mr. Hensley died is not relevant to this case and. . . . I still stipulate to the serious bodily injury and the

medical records and everything about that, but you hit the nail right in the head. It's not that death is an element, it's the substantial risk of death is an element to serious bodily injury ... or that causes permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of a bodily member or organ. Mr. Hensley's leg was shot with a gun, was a huge gaping wound, severed his (INAUDIBLE) artery, there is a bone that's broken or bone chips on the ground. The jury doesn't need to know that he died to see that he's got a serious bodily injury. It's only to inflame the jury and to unfairly prejudice the Defendant that that evidence comes in. It's just simply not relevant to the whole story of what happened here....

[The State]: It's res [g]estae. It's misleading as to the actual facts of what occurred.

[Defense Counsel]: The facts of what occurred, let's talk about what the facts are. Harold Lewis shot Mr. Hensley. No doubt. Mr. Hensley was in shrewd pain laying [sic] there with a huge gaping wound, blood pouring out all over the scene. Not a single officer or anyone, until the medical people got there, did anything to stop this bleeding and ultimately, 24 hours later, not that night, he succumbed to the leg injuries by loss of blood. How is the death also relevant to the serious bodily injury? It's just ... it's not. It's unfairly prejudicial....

[The State]: I still think it goes to res gestae and I still think it's misleading the jury. (INAUDIBLE). It's anesthetizing the jury, basically, so they don't get to see anything about the serious bodily injury. They don't get to know

anything about the serious bodily injury. He gets to talk about self defense. It just seems to me, Judge, that we are just ... it's tying the State's hands and not allowing that jury to know what they need to know to make the proper decision. It's depriving them of information that they have a right to know. What are they going to think when Mr. Hensley never shows up? ...

[Defense Counsel]: Judge, what is the jury going to think about serious bodily injury? First of all, it's stipulated to. Second of all, they're still going to see photos of Mr. Hensley laying there with a pool of blood three foot wide and you can see the white bones hanging out of his leg and you can see his face. There's still plenty and I'm not saying they can't show those photographs. Those are relevant. I understand that. My stipulation shouldn't preclude them from doing that, but what's the point of the autopsy report if it's not to prejudice the jury?

Tr. at 89, 90, 92, 95, 97–99.

When each side finished arguing its position, the court granted Lewis's motion in limine and explained: "Given the fact that [Lewis is] going to stipulate to [serious bodily injury], we're going to find that any prejudice would outweigh any probative value and the State can give an instruction to the fact to the jury that the injury meets the definition of serious bodily injury." *Id.* at 99. The State immediately sought, and the court granted, an order certifying an interlocutory appeal on the question of the granting of the motion in limine. *Id.* at 99–100. Accordingly, the jurors were permitted to leave, and the case eventually made its way to our chambers.[1]

**1.** Although briefing was complete in June 2007, we did not receive this case from the Clerk's office until February 28, 2008. We

regret the delay—particularly in an interlocutory appeal.

## Discussion and Decision

■ An order in limine is not a final determination of the admissibility of the evidence referred to in the motion. *Smith v. State*, 506 N.E.2d 31, 35 (Ind.1987) (citing *Akins v. State*, 429 N.E.2d 232, 237 (Ind.1981)). "An appeal may be taken from ... interlocutory orders if the trial court certifies its order *and* the Court of Appeals accepts jurisdiction over the appeal." Ind. Appellate Rule 14(B) (emphasis added). In this case, the trial court certified its order granting Lewis's motion in limine, and the State filed a motion with this Court to accept jurisdiction of the appeal. Having granted the State's motion, we have jurisdiction to review the trial court's order. *See State v. Foy*, 862 N.E.2d 1219, 1223–24 (Ind.Ct.App.2007), *trans. denied.*

■ The State charged Lewis with, and the grand jury indicted him of, class C felony criminal recklessness. Specifically, the State alleged that Lewis "knowingly or intentionally inflict[ed] serious bodily injury on another person by means of a deadly weapon by discharging a firearm at and in the direction of Dennis Hensley and thereby resulting in a gunshot to the right le[g] of Dennis Hensley constituting serious bodily injury[.]" App. at 12. Indiana Code Section 35–42–2–2(d) states: "A person who recklessly, knowingly, or intentionally: (1) inflicts serious bodily injury on another person ... commits criminal recklessness, ... a Class C felony if committed by means of a deadly weapon." "Serious bodily injury" means bodily injury that "creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; [or] (4) permanent or protracted loss or impairment of the function of a bodily member or organ[.]" Ind.Code § 35–41–1–25. Case law has determined that death falls within the category of serious bodily injury. *Nelson v. State*, 664 N.E.2d 386, 388 (Ind.Ct.App.1996), *trans. denied.*

On appeal, the State argues that the court erred in prohibiting the State from introducing evidence that Hensley, "the victim of the alleged criminal recklessness," had died. Appellant's Br. at 4. The State contends that Hensley's death was relevant to prove serious bodily injury. In addition, the State maintains that Hensley's unexplained absence from trial would lead to unfair, erroneous conclusions by the jurors. Finally, the State stresses that it cannot be forced to enter into Lewis's stipulation regarding serious bodily injury. In short, the State claims it should be able to present its case how it wishes.

Lewis asserts that serious bodily injury is abundantly clear from the various gory photos of Hensley that Lewis will not be challenging at trial. Therefore, Lewis contends, mentioning Hensley's death, which apparently occurred more than twenty-four hours after the incident, would not be relevant to the serious bodily injury element. Instead, such evidence would be unfairly inflammatory and confusing.

■ "The granting or denying of a motion in limine is within the sound discretion of the trial `court." *Perry v. Gulf Stream Coach, Inc.*, 871 N.E.2d 1038, 1047 (Ind.Ct.App.2007). "The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence." *Id.* We apply the standard of review applicable to questions concerning the admission of evidence, that is, abuse of discretion. *Hopper v. Carey*, 716 N.E.2d 566, 570 (Ind.Ct.App.1999), *trans. denied.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Bentley v. State*, 846 N.E.2d 300, 304 (Ind.Ct.App.2006), *trans. denied.*

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Houser v. State*, 823 N.E.2d 693, 697 (Ind.2005) (citing Ind. Evidence Rule 401). Evidence that is not relevant is not admissible. Ind. Evidence Rule 402. Indiana Evidence Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

■■■ Our supreme court has stated in no uncertain terms: "A party may refuse to stipulate to any facts." *Perigo v. State*, 541 N.E.2d 936, 940 (Ind.1989). Indeed, stipulation is defined as " 'an agreement between counsel with respect to business before a court.' " *Brown v. State*, 448 N.E.2d 10, 17 (Ind.1983) (citing 26 I.L.E. *Stipulations* § 1 at 383 (1960)). "The use of the word 'agreement' in the definition of stipulation makes it apparent one party's willingness to enter into a stipulation has no significance *unless* the other party is also willing to enter the stipulation." *Id.* (emphasis added) (citing 83 C.J.S. *Stipulations* § 3 (1953)). Further, "[a]n offer to stipulate does not affect the trial court's consideration of the admissibility of evidence." *Perigo*, 541 N.E.2d at 940; *see also Brown*, 448 N.E.2d at 17 ("Because appellant was willing to stipulate to the cause of death of [victim], it does not follow the admission of the exhibits was error.").

■■ It follows then that a "defendant's objection pursuant to Rule 403 of the Indiana Rules of Evidence and his offer to concede a point generally cannot prevail over the government's choice to offer evidence showing guilt and all the circumstances surrounding the offense." *Kellett v. State*, 716 N.E.2d 975, 979 (Ind.Ct.App. 1999) (citing *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (stating the same with respect to the identical Federal Rule of Evidence 403, but concluding that such rule has virtually no applicability where the point at issue is a defendant's legal status that is independent of criminal behavior later charged against him), and *Sams v. State*, 688 N.E.2d 1323, 1325 (Ind.Ct.App.1997) (relying on *Old Chief* and holding that trial court abused its discretion by admitting into evidence defendant's entire motor vehicle driving record, instead of allowing defendant to stipulate that his license was suspended for life, but finding error was harmless), *trans. denied*).

In *Kellett*, a case of operating a vehicle while intoxicated resulting in serious bodily injury, the State offered into evidence photographs to establish the victim's severe injuries. Kellett asserted that the photographs should have been excluded because she had offered to stipulate that the victim had suffered serious bodily injury as a result of the accident. The State refused to stipulate. We concluded:

> Because the State was entitled to prove its case by evidence of its own choice, and because a criminal defendant may not unilaterally stipulate her way out of the full evidentiary force of the case to be presented against her, the trial court did not abuse its discretion in admitting the photographs over Kellett's objection and offer to stipulate to the facts proven by the photographs.

*Id.* at 979.

Similarly, in *Perigo*, the defendant challenged the admission of gruesome photographs of the murder victim and her fetus. Our supreme court had little sympathy for Perigo's contention that the "utterly re-

volting nature of these photographs outweighs their relevance to the issues." 541 N.E.2d at 939. The Court noted, "the purpose of relevant evidence is to prove, however slightly, the material issues. This cannot be done sometimes without presenting disagreeable evidence. Revolting crimes generate revolting evidence." *Id.* at 939–40. Our supreme court was equally unimpressed with Perigo's argument that his offer to stipulate the evidentiary value of the photographs should have been considered in the balancing test of relevancy versus prejudicial effect. *Id.* at 940.[2] The Court explained:

> Certainly, some exhibits are inadmissible because of their prejudicial nature or lack of relevance, but an adversary's offer to stipulate does not bear on admissibility. Each adversary must be permitted to offer and admit evidence solely on admissibility standards. Accepting Perigo's argument would unnecessarily deny each side the proper independence with which to present its case.

*Id.*

▮ Not long ago, our supreme court reaffirmed the general rule that "the State is entitled to prove its case by evidence of its own choice, and that a criminal defendant may not stipulate his or her way out of the full evidentiary force of the case to be presented against him or her[.]" *Hines v. State,* 801 N.E.2d 634, 635 (Ind.2004) (quoting the *Hines* appellate court decision, and noting the exceptions outlined in *Old Chief* and *Sams*). In short, Lewis has offered, and we have found, no cases that would force the State to agree to a defendant's proposed stipulation to an essential element of the crime. To the contrary, while a defendant is free to request a stipulation for strategic reasons,[3] the State need not acquiesce unless it concerns the defendant's legal status or prior record.

Applying the aforementioned law to the present dispute, we must conclude that while Lewis was free to request a stipulation regarding serious bodily injury, the State was not required to agree. Moreover, the State is entitled to prove that Lewis committed criminal recklessness resulting in serious bodily injury by evidence of its own choice. Thus, assuming admissibility decisions are based upon our Indiana Rules of Evidence, gory photographs, the fact that Hensley died some time after the incident, other evidence, and/or some combination thereof, may all be fair game. Accordingly, we must reverse the grant of Lewis's motion in limine and remand for proceedings consistent with this opinion.

Reversed and remanded.

BAILEY, J., and NAJAM, J., concur.

---

2. Although *Perigo* was decided five years prior to the adoption of the Indiana Rules of Evidence, the language echoes Rules 401, 402, and 403 in relevant part.

3. This tactic may or may not be successful. *See, e.g., Hollins v. State,* 790 N.E.2d 100 (Ind.Ct.App.2003), *trans. denied.* "At the outset of trial, Hollins was willing to stipulate to the trial court that [the victim] sustained bodily injury on the date in question in the form of multiple trauma to his head and other parts of his body, as well as a single gunshot wound[.]" *Id.* at 108. Nevertheless, the trial court heard multiple references to the seriousness of the victim's injuries. *Id.*