MAY, Judge.
[1] In this interlocutory appeal from the trial court’s pre-trial orders regarding the admissibility of evidence, the parties raise a number of broad policy questions regarding whether and how an injured plaintiffs status as an undocumented immigrant should impact that plaintiff’s ability to recover future lost wages from an alleged tortfeasor. We decline their invitations to make sweeping pronouncements about the rights of immigrants, however, and rule narrowly on the evidentiary issues raised. Although we disagree with part of the trial court’s reasoning, we affirm its denial of Noe Escamilla’s motion in limine and its grant of Shiel Sexton’s motion to exclude Escamilla’s experts, and we remand for further proceedings in accordance with our opinion.[1]
Facts and Procedural History
[2] Escamilla was born fin. Mexico. When he was a teenager, his parents moved the family, including Escamilla, to the United States. Escamilla lived with his family in Nevada and began working as a masonry laborer. At some point thereafter, he moved to Indiana, where he again found work with masonry companies. Es-camilla had a social security number that he used to pay taxes' on his income, but that number was not connected to him. He was, at that time, an undocumented immigrant working.in the United States.[2]
*1016 [3] In December of 2010, Noe Escamil-la, an employee of Masonry By Mohler, Inc,, was assigned to work at a construction site where Shiel Sexton Company, Inc. was the general contractor. On December 9, while part of a crew lifting a heavy piece of stone, Escamilla slipped on ice and was injured. Doctors permanently restricted Escamilla from lifting more than twenty pounds,, which prevents his continued employment as a masonry laborer.
[4] Escamilla sued Shiel Sexton, seeking medical expenses, lost wages, and future lost income. He planned to call expert witnesses to testify his injuries had permanently -impaired his earning capacity as a masonry laborer in the United States. Escamilla then filed a motion in limine to prevent mention of his immigration status. Shiel Sexton moved to exclude the expert witnesses Escamilla planned to call because those experts would testify only about the income Escamilla could have made in the United States as a masonry laborer. Shiel Sexton asserted testimony about Escamilla’s earning capacity should be limited to the income he could earn in Mexico, which is. his country of origin, because Escamilla had.no legal.right to reside or work in the United States at the time of his accident.
[5] The trial court denied Escamilla’s motion in limine and granted Shiel Sexton’s motion:
Escamilla is a citizen of Mexico. He is not a legal resident of the United States and has no legal authority to hold employment in the U.S. Though there is evidence that suggests that he intends to remain in the U.S. as long as he is permitted, even his own witness concedes that he may be permitted to remain in the country after his pending application is approved.[3] Additionally, he has not even filed a formal request for permission to work in the United States. Thus, he would be precluded from mitigating his claim for lost future wages in this matter since he cannot legally work in the United States. Moreover, it is evident that Escamilla violated federal law in order to secure employment with the Company by providing false documentation of his ability to be legally employed in the United States. • •
Both parties concede that there is no controlling Indiana law on-point. The Court, having reviewed the law cited by the parties and other relevant cases, finds that the Supreme' Court of the United States provided the best guidance in Hoffman Plastic Compounds, Inc. v. National Labor Relations Board, 535 U.S. 137 [122 S.Ct. 1275, 152 L.Ed.2d 271] (2002). In Hoffman, the employee was an illegal alien who had provided false documentation in support of his application for employment with Hoffman. Thereafter, the employee was terminated for engaging in union organization practices and the National Labor Relations Board (“NLRB”) ordered his reinstatement and the payment of back wages. The Supreme Court reversed that decision, based on federal preemption and public policy.
Though the issues are not exactly the same, the analogy is instructive. Much of the Hoffman decision is based on the *1017 fact that the employee had provided false documentation of his ability to work in- the United States, which is criminalized by IRCA, the Immigration Reform and Control Act. The court determined that an employee who was “never lawfully entitled to be present or employed in the United States” is not entitled to claim back pay. 535 U.S. at 146 [122 S.Ct. 1275], Further, allowing the payment of back wages “not only trivializes the immigration laws, it also condones and encourages future violations.” Id. at 150 [122 S.Ct. 1275]. The cases relied upon by Escamilla are distinguishable wherein there was no allegation that the employee had provided false documentation óf his ability to be present or to be employed in the United States. Such is not the case here. Clearly, Escamilla’s immigration status is relevant to the issue of damages on his claim for lost future income. Therefore, the jury should be entitled to hear evidence regarding Escamilla’s immigration status and his motion in limine should be and hereby is DENIED. Company next argues that Escamilla should be precluded from presenting evidence by his proffered experts, Sara Ford and Ronald Missun. Based upon the Wielgus case, cited by both parties, Escamilla’s ability to recover for lost future wages is limited to “what he could legitimately earn in his country of lawful residence.” Wielgus v. Ryobi Technologies, Inc., 875 F.Supp.2d 854, 862 (N.D.I11.2012). Thus, Escamilla’s claim for lost future income is limited to what he could legitimately earn in Mexico, his country of lawful residence and any evidence regarding potential future earnings in the United States would be inadmissible.
Sara Ford has apparently not considered what Escamilla’s legitimate eam-ings might be in Mexico. Rather, she has based her projections' on what' he could earn in the United States. However, since he is not legally permitted to work in the U.S., and because he supplied false documentation of his ability to do so, he is precluded from going forward on- a claim for future lost income in the United States. Accordingly, her testimony is not relevant and shall be EXCLUDED.
Likewise, Escamilla seeks to have Ronald Missun testify regarding the present value of the future lost wages based on Sara Ford’s irrelevant calculations of United States earnings. Therefore, his testimony ⅝ also not relevant and shall be EXCLUDED. '
(App. at 200-02) (footnote and emphases in original). The trial court certified that order for interlocutory appeal and we accepted jurisdiction.[4]
Discussion and Decision .
[6] Escamilla appeals the trial court’s in limine order that: (1) evidence of his immigration status would be admis *1018 sible, and (2) expert testimony about “future lost wages” based on what he could have made working in the United States would not be admissible.[5] Orders in li-mine are “not a final determination of the admissibility of the evidence referred to in the motion.” State v. Lewis, 883 N.E.2d 847, 851 (Ind.Ct.App.2008). Nevertheless, pursuant to Indiana Appellate Rule 14(B), we have jurisdiction to review in limine orders if the trial court certifies the order for appeal and we accept jurisdiction. Id. Both of those procedural pre-requisites are met and we have jurisdiction to review the pre-trial order. See id.
The granting or denying of a motion in limine is within the sound discretion of the trial court. The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. We apply the standard of review applicable to questions concerning the admission of evidence, that is, abuse of discretion. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court.
Id. (internal citations and quotations omitted).
[7] As a preliminary matter, we note a trial court’s evidentiary rulings are controlled by the Indiana Rules of Evidence.
Pursuant to those rules, “[irrelevant evidence is not admissible” and save a few exceptions, “[relevant evidence is admissible.” Evid. R. 402. Evidence is relevant if “it has any tendency to make a fact more or less probable than it would be without the evidence” and “the fact is of consequence in determining the action.” Evid. R. 401. A trial court “may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.” Evid. R. 403.
[8] The parties disagree about the types of evidence that should be admissible to prove Escamilla’s claim for future lost wages based on his impaired earning capacity. “The gist of the element of impaired earning capacity is a showing of adverse effect on a plaintiffs vocation.” Montgomery Ward & Co. v. Gregg, 554 N.E.2d 1145, 1164 (Ind.Ct.App.1990), reh’g denied, trans. denied. One may recover such damages if an injury “causes a career change” or precludes a preferred field of employment. Id. Calculating damages for impaired earning capacity involves assessing “the difference between the amount which the plaintiff was capable of earning before the injury and the amount which he is capable of earning, thereafter.” Scott v. *1019 Nabours, 156 Ind.App. 317, 321, 296 N.E.2d 438, 441 (1973).
[9] Proving impaired earning capacity requires “more than mere proof of permanent injury and pain.” Id. at 320, 296 N.E.2d at 441, A plaintiff must also present “evidence of probative value which relates the injury to an inability to engage in one’s vocation.” Id. at 320-21,' 296 N.E.2d at 441. “Like other damage issues this issue may be proven by both expert and non-expert testimony.” Id. at 321, 296 N.E.2d at 441. But the evidence must “permit the jury to arrive at a pecuniary value of the loss.” Barker v. Cole, 396 N.E.2d 964, 968 (Ind.Ct.App.1979), reh’g denied. The jury may not be left to arrive at its decision based on speculation and conjecture. Kirk v. Harris, 173 Ind.App. 445, 449, 364 N.E.2d 145, 148 (1977), reh’g denied, superseded on other grounds by amendment of Trial Rule 38.
[10] Shiel Sexton asserts evidence of future wages Escamilla could have earned in the United States is speculation because Escamilla has no legal right to work in the United States. Escamilla notes he has never worked in Mexico and has no intention of returning to Mexico, so testimony of future wages in Mexico is also speculative.
[11] The “amount that the injured party would have earned but for the injury is not susceptible to precise measurement in a personal injury action involving a claim for lost, [sic] future earning capacity.” 22 Am.Jur.2d § 166 (2013). See also Republic Waste Servs., Ltd. v. Martinez, 335 S.W.3d 401, 407 (Tex.App.2011) (“The amount of income that may be earned in the future by a plaintiff or, as in this case, by a decedent is always uncertain, and must be left largely to the judgment and discretion of the jury.”).
[12] The inability to measure precisely is not unique to Escamilla or to undocu-
mented immigrants. See, e.g., Berman v. Cannon, 878 N.E.2d 836, 842-43 (Ind.Ct.App.2007) (in which economics professor testified about the lost earning capacity of a homemaker with no prior employment history). And see Rieth-Riley. Const. Co. v. McCarrell, 163 Ind.App. 613, 620, 325 N.E.2d 844, 849 (1975) (holding difficulties in' measuring lost wage damages for plaintiff unemployed at the time of the injury does not preclude recovery of lost wages). Precise measurement is not possible because “the measure of the' plaintiffs decreased capacity to earn money requires a prediction as to future impairment,” 22 Am.Jur.2d § 154, life expectancy, and the job market, among other factors.
[13] This inability to foresee the future is why “[t]here is no fixed 'rule for estimating the amount of damages to be recovered for loss or diminütion of earning capacity.” Id. at § 159. Rather, the issue is left to the jury, which is expected to award “fair and reasonable compensation” in light of the injured person’s situation. Id. In order for a jury to award compensation that is fair and reasonable in light of the circumstance's, that jury must- be presented all evidence of the plaintiffs circumstances that is relevant to making that determination:
Although no general rule can be formulated that would properly control the admission of evidence to prove a person’s future earning capacity, any evidence is admissible.that would, faicly indicate the person’s present earning capacity and the probability of its increase or decrease in the future, including evidence of age, intelligence, habits, health, occupation, life expectancy, ability, probable increase in skill, and rates of wages paid generally to those following the person’s vocation.'
*1020 Id. at § 754. ■ ■See also id. at §s 159 (jury should consider “what the plaintiffs income would probably have been, how long it would have lasted, and all the contingencies to which it was liable”).
[14] Because the amount of damages to award for lost future income is a question of fact historically left to the jury, we decline to determine as a matter of law where, but for his injury, Escamilla might have worked in the future.[6] See, e.g., Ayala v. Lee, 215 Md.App. 457, 480 n. 19,, 81 A.3d 584, 598 n. 19 (Md.App.2013) (“we believe that a blanket rule prohibiting United States earnings improperly ignores the reality of a plaintiffs living situation, regardless of his or her legal status”). Instead, we defer to the jury’s ability to weigh all the evidence presented by the parties at trial and to determine the “fair and reasonable compensation” due Escam-illa in light of the probabilities of the multiple contingencies that exist. See 22 Am. Jur.2d § 159.
[15] A plaintiffs status as an undocumented immigrant is just another fact for the jury to consider as it makes its damages determination:
The question of whether a party is entitled to United States earnings or home country earnings is a question of fact, because it necessarily depends on the jury determining the likelihood of whether or not the party will remain in the United States for the duration of the awarded compensation. In other words, if it is unlikely that a plaintiff will be deported or if he shows a long history of working in the United States, a-Unites States pay rate is more appropriate. If there is evidence that the plaintiff is likely to return to his home country, whether by choice or by deportation, a . country of origin pay rate is more appro-? priate.
Ayala, 81 A.3d at 598 (internal citations omitted). See also Ortiz v. Cooper Tire & Rubber Co., 2015 WL 1498713 at *6 (W.D.Okla.2015) (holding recovery of compensatory damages by an undocumented alien is “a matter of factual proof’).
[16] With this legal landscape in mind, we turn to the two issues raised by the parties: whether the court abused its discretion by excluding the testimony of Es-camilla’s expert witnesses, and whether the court abused its discretion by permitting. the admission of testimony about Es-camilla’s status as an immigrant.

Expert Witnesses

[17] The trial court ruled the evidence from Escamilla’s proposed expert witnesses was not relevant because Es-camilla’s damages could not be based on United States wages when he could not work legally in the United States. As we *1021 have explained, a fact-finder may award damages for lost earning capacity to an undocumented immigrant based on United States wages if the evidence presented at trial supports such a finding.- We therefore cannot affirm the trial court’s decision based on its stated reason.
[18] Nevertheless, we affirm the court’s in limine order excluding Escamil-la’s experts and their report on another basis. At a deposition of one of those experts, Sara Ford, the questioning revealed Ford had not taken into account the fact that Escamilla was an undocumented immigrant:
Q Did your analysis take into account whether or not he’s a U.S. citizen?
A No. My analysis accounts for federally mandated benefits, and I can see that he was paying into the tax program.
[[Image here]]
Q You understand that he’s not a U.S. citizen, correct?
A I understand that.
Q You understand that he could be deported. Yes?
A I don’t have a further understanding of how that works. I can’t answer , that question yes or no.
(App. at 34.) As such, the report Ford and Mussin prepared had not been adequately tied to the facts of Escamilla’s case. Cf. Ortiz v. Cooper Tire & Rubber Co., 2015 WL 1498713 at *8-9 (W.D.Okla.2015).
[19] In Ortiz, a van wrecked and an injured passenger, Morales, requested damages for lost future wages. He hired experts to testify thereto. Cooper Tire asserted the expert opinions as to lost future wages should be- excluded as “unreliable because they fail to account for factors that are unique to Carlos Morales, such as his immigration status, illegal United - States employment, and possible deportation or voluntary return to Guatemala.” Id, at %7.
[20] To support the admissibility of the expert’s opinion, Morales filed an affidavit from his expert, and the court provided the following description of the affidavit in its opinion:
[The expert] explains his decision to utilize wage rates from employment at National Beef Packing Company based on immigration statistics regarding undocumented workers in the national economy, Mr. Morales’' employment history and past behavior, a “statistically insignificant” possibility of deportation, arid a lack of evidence that Carlos Morales would have considered returning to Guatemala if the accident had not occurred. After considering relevant economic factors, [the expert] concludes that “more likely than not, the'earning capacity Mr. Morales lost due -to the accident prevented employment which otherwise would have occurred > in the United States, notwithstanding his civil immi■gration status.”
Id. (internal citations omitted). The court held the expert’s report was admissible because the affidavit “reliably linked” the expert’s opinion to the facts of the case at hand. Id.
[21] The report prepared in support of Escamilla’s claim had no such support. Rather, the expert testified she had not given any consideration to his status as an undocumented immigrant or the impact that fact might have on his claim.- Thus the report was inadequately tied to the facts of Escamilla’s case to be admissible.

Immigration Status

[22] The trial court ruled it would not exclude evidence of Escamilla’s status as an immigrant because “Escamilla’s immigration status is relevant to the-issue of *1022 damages on his claim for lost future income.” (App. at 200.) As is true with all forms of evidence, Escamilla’s status as an immigrant should be excluded if it has no relevance, or if the risk of prejudice outweighs its probative value. Evid. R. 403. See also Crenshaw v. McMinds, 456 N.E.2d 433, 434 (Ind.Ct.App.1983) (trial court committed reversible error by admitting evidence of decedent’s felony conviction when that fact was not relevant to decedent’s lost earning capacity and was highly prejudicial), reh’g denied.
[23] Shiel Sexton acknowledges the relevance of a plaintiffs status as an undocumented immigrant depends on the specifics.of that plaintiffs claim for damages:
If ... Escamilla is not allowed to introduce any lost future earnings claim, then Shiel Sexton cannot conceive of a basis on which it will introduce evidence of Escamilla’s undocumented status. . Even if the Court were to allow Escamilla to claim an entitled [sic] to loss [sic] future earnings at Mexican income rates only, then it is not clear how his immigration status would be admissible. Only if Es-camilla is allowed to claim an entitlement to a loss of earning capacity at United States wages would Shiel Sexton seek to introduce evidence of Escamilla’s apparent undocumented status.
(Br. of Appellee at 11.) We agree, and hold Escamilla’s immigration status is relevant to a claim of lost earning capacity only if: (1) Escamilla claims lost earning capacity in United States wages, and (2) Escamilla’s immigration status leaves him with any risk of deportation. See, e.g., Velasquez v. Centrome, Inc., 233 Cal. App.4th 1191, 183 Cal.Rptr.3d 150 (2015) (evidence of immigration status is irrelevant in personal injury action when plaintiff does not claim damages for lost earnings or earning capacity). And see Ayala, 81 A.3d at 597 (“Immigration status is relevant to a claim for lost wages for the simple reason that the legal ability to work affects the likelihood of future earnings in the United States.”).
[24] Escamilla and the Indiana Trial Lawyers Association argue that, even if his immigration status is relevant, evidence of his status is so prejudicial in today’s political climate that its probative value is outweighed, by the prejudicial effect. We acknowledge that other courts have so held. See, e.g., Salas v. Hi-Tech Erectors, 168 Wash.2d 664, 230 P.3d 583, 587 (2010) (en banc) (holding evidence of immigration status was relevant to lost future earnings, but concluding “with regard to lost future earnings, the probative value of immigration status, by itself, is substantially outweighed by its risk of unfair prejudice”).
[25] However, it is not apparent how Escamilla’s trier of fact might accurately determine his future earning capacity without that knowledge, as it must determine whether to award lost earnings based on United States wages, Mexican wages, or some other standard. The prejudicial effect of that evidence therefore currently does not outweigh its probative value. As Escamilla is claiming lost earning capacity based on United States wages and has an immigration status that might leave him with some risk of deportation, we affirm the trial court’s denial of Escam-illa’s motion to exclude evidence of his immigration status. Should Escamilla’s immigration status change before trial, such that he no longer is at risk of deportation, then the trial court would need to reevaluate the relevance of the evidence in light of our analysis.
Conclusion
[26] Based on the circumstances at the time of the trial court’s order, we affirm the grant of Shiel Sexton’s motion to ex- *1023 elude the testimony and report from Es-camilla’s expert witnesses, we affirm its denial of Escamilla’s motion in limine to exclude evidence of his status as an undocumented immigrant, and we remand for further proceedings consistent with this opinion.
[27] Affirmed and remanded.
BRADFORD, J., concurs.
BAKER, J., dissents with separate opinion.

. We heard oral argument on this cause at the Statehouse on January 6, 2016. We commend counsel for their insightful discussion of the relevant law and facts.

. In 2011, Escamilla married a United States *1016 citizen and together they now have three children who are United States citizens. Escam-illa has now filed paperwork with the United States government requesting permission to remain in the country, but his petition remains pending.

. Long after the incident giving rise to this matter, Escamilla sought permission from the United States Government to remain in the country. At -the time of oral argument, the application was pending,

. In its Brief of Appellee, Shiel Sexton asserts we should strike pages 238-263 of Escamilla’s Appendix of Appellant, because those documents were not presented to the trial court. Generally, we consider only evidence and arguments presented to the trial court when we review the correctness of a trial court’s decision. See, e.g., Luster v. State, 578 N.E.2d 740, 746 (Ind.Ct.App.1991) ("An appellant may not attempt to build a new record on appeal to support his position with evidence that was .never admitted in the court below.”). Because ,the pages to which Shiel Sexton • points do not appear to have been provided to the trial court during the pre-trial proceedings, we may not consider them on appeal . and we strike them from the Appendix of Appellant. See Chesterfield Management, Inc. v, Cook, 655 N.E.2d 98, 101 (Ind.Ct.App.1995) (striking from Appendix documents that had not been placed before trial court).

. Escamilla also challenges as unsupported by the record the following factual finding in the trial court's order: “Moreover, it is evident that Escamilla violated federal law in order to secure employment with the Company by providing false documentation of his ability to be legally employed in the United States.” (App. at 200.) There seems to be no disagreement that Escamilla filed his taxes on the income earned at Masonry By Mohler using a social security number that was not his. But the Record before us includes no evidence-he “provid[ed] false documentation” to Masonry By Mohler. (Id.) Thus, we agree that finding is unsupported by the Record.
The trial court relied, in part, on that finding when it determined Escamilla was "precluded from going forward on a claim for future lost income in the United States,” (Id. at 202), “because he supplied false documentation of his ability to” work in the United States. (Id. at 201-02.) Nevertheless, we need not reverse because that finding is harmless. App. R. 66 (appellate court does hot.reverse for harmless error). Escamilla's ability to claim future lost earnings is controlled by his ability to demonstrate, at the time of trial, whether and where he can work. Thus, the court’s finding about the past is of no consequence and we need not reverse based thereon.

. The trial court relied, on Hoffman Plastic Compounds, Inc. v. National Labor Relations Board, 535 U.S. 137, 122 S.Ct. 1275 (2002), in ordering Escamilla could not claim future income based on United States wage rates. Hoffman is distinguishable not just because of the factual differences discussed above, see supra n, 3, but also because of the type of damages being awarded. The NLRB ordered Hoffman to “offer reinstatement and back-pay" to a worker who could not legally work in the United States. Hoffman, 535 U.S." at 140, 122 S.Ct. 1275. Escamilla is not being reinstated and his damages are not “wages;” rather, he is being compensated for his inability to continue the same kind of work he had been doing. See Crenshaw v. McMinds, 456 N,E.2d 433, 434 (Ind.Ct.App.1983) (“It is not the actual lost future earnings that constitutes the damage element.'... It is rather the loss of earning capacity that is the proper element of damages.” (emphasis in original)), reh’g denied. And see Ayala v. Lee, 215 Md.App. 457, 477, 81 A.3d 584, 596 (Md.App.2013) (“neither the [Immigration Reform and Control Act of 1986] nor Hoffman mandates denying awards of lost wages or medical expenses to undocumented immigrant employees solely because of their immigration status").