Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Mar 29 2012, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**C. BRENT MARTIN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GERALD C. VICKERS,          )
                            )
    Appellant-Petitioner,   )
                            )
      vs.              )    No. 48A05-1109-PC-510
                            )
STATE OF INDIANA,           )
                            )
    Appellee-Respondent.    )

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Rudolph R. Pyle, III, Judge
Cause No. 48C01-0803-PC-113

**March 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Gerald C. Vickers ("Vickers") appeals the denial of his petition for post-conviction relief asserting ineffective assistance of appellate counsel. We affirm.

## Issues

Vickers raises two issues for our review that we reframe and restate as:

I.   Whether the post-conviction court abused its discretion by admitting into evidence certain testimony offered by the State; and

II.  Whether the post-conviction court erred by denying Vickers's petition for post-conviction relief.

## Facts and Procedural History

On February 24, 2004, the State charged Vickers with Aggravated Battery, as a Class B felony,[1] and alleged that he was a habitual offender.[2] Bail was set at $20,000, but Vickers filed a motion seeking to reduce that amount on March 3, 2004.

On May 3, 2004, the trial court held a hearing on Vickers's motion. After Vickers's court-appointed public defender, Angela Sims ("Sims"), elicited testimony from Vickers and his mother concerning the bond amount, the State called the court's attention to Vickers's history of mental health problems. In response, the trial court stated that "I think we would all be better served if we attempted to have some kind of mental health assessment" and "maybe we can figure out a way to get this man released but I need to know what kind of man I'm dealing with." Respondent's Exhibit 1, p. 14-15.

Also during this hearing, Sims notified the court of Vickers's desire to proceed pro se

---

[1] Ind. Code § 35-42-2-1.5.
[2] I.C. § 35-50-2-8(A).

2

at trial. The trial court determined that it would hold off on addressing that issue until more information about Vickers's mental health was available. Over Vickers's protest, the court ordered a "C.S.T exam," adding that "if he's not [c]ompetent to stand trial he's clearly not competent to, to represent himself." Respondent's Exhibit 1, p. 16. The court also warned Vickers that any possible bond reduction was dependent upon cooperation with the psychologist.

Dr. Susan Anderson ("Dr. Anderson") examined Vickers on June 9, 2004 to determine whether Vickers knew right from wrong at the time of the offense. She observed that Vickers had longstanding psychiatric illness with episodic exacerbations and times of partial remission, but concluded that "alcohol intoxication is the primary factor at the time of the assault." App. 10. Dr. Anderson submitted her report to the court on June 25, 2004.

The trial court held another hearing on July 23, 2004 to revisit Vickers's request for a bond reduction. Citing Dr. Anderson's report, the trial court stated that "I don't believe that based on the evaluation I'm in a position to reduce the bond" and denied Vickers's request. Petitioner's Exhibit 1, p 7. The issue of Vickers's self-representation was again discussed, but no formal record of Vickers's waiver of counsel was made.

On September 1, 2004, Sims filed a motion seeking to withdraw as Vickers's counsel, citing several reasons, including Vickers's continued desire to represent himself. The trial court held a hearing on Sims's motion on September 3, 2004. At the hearing, Vickers again expressed his desire to represent himself, and the trial court conducted an extensive inquiry of Vickers's understanding of the responsibilities and risks involved in such an undertaking.

At one point in the hearing, the discussion again turned to Vickers's mental health. Concerning Vickers's medication, the court stated:

> Since you're not taking your medicine and you have a history of some medical difficulties, with your permission I believe I should be obligated in addition to asking you all these questions to make you get an examination to see if you need to be taking your medication.

Petitioner's Exhibit 1, p. 47.

Later, the court asked Sims if she would be "offended if on my own motion [sic] ordered an examination of [Vickers] to make sure that he's competent to stand trial so that issue doesn't come up," and lamented the fact that Dr. Anderson had evaluated whether Vickers knew right from wrong at the time of the offense, but did not evaluate his competency to stand trial at her first exam. Petitioner's Exhibit 1, p. 48-49. Vickers again protested the court's ordering of a psychological exam and argued that various aspects of Dr. Anderson's first report demonstrated his competence. The trial court nevertheless ordered the psychological exam and denied Sims's motion to withdraw.

Dr. Anderson again evaluated Vickers on September 13, 2004, and assessed his competency to stand trial. During the examination, Vickers told Dr. Anderson that he did not think that he needed to be evaluated, but he was nevertheless cooperative. Dr. Anderson concluded that Vickers was competent to stand trial.

That same day, the court held another hearing at which Vickers reiterated his desire to self-represent with the assistance of Sims as standby counsel. After the trial court explained the risks involved with self-representation and ensured that Vickers understood

4

these risks, Vickers waived his right to counsel.

Vickers's trial commenced the following day on September 14, 2004, and concluded on September 17, 2007, whereupon the jury found Vickers guilty as charged. Following the habitual offender stage of the proceedings, he was adjudicated to be a habitual offender. Vickers was sentenced on October 1, 2004 to twenty years imprisonment for Aggravated Battery, enhanced by thirty years for his adjudication as a habitual offender, for an aggregate sentence of fifty years imprisonment.

Attorney David Stone ("Stone") was appointed to represent Vickers in his direct appeal. In his appellate brief, Stone raised and argued the following three issues: whether the trial court erred by refusing to give Vickers's requested self-defense instruction, whether the trial court properly found and balanced aggravating and mitigating factors, and whether Vickers's sentence was appropriate in light of his character and the nature of his offense. We affirmed Vickers's conviction and sentence on October 28, 2005, Vickers v. State, 48A05-0504-CR-222 (Ind. Ct. App. October 28, 2005), and the Indiana Supreme Court denied transfer on January 11, 2006.

Vickers filed a pro se petition for post-conviction relief on March 10, 2008. On August 27, 2010, Vickers, now represented by the Public Defender of Indiana, amended his petition to assert ineffectiveness of appellate counsel because Stone did not challenge the procedures whereby the trial court determined Vickers's competency to stand trial.

The post-conviction court held a hearing on Vickers's petition on December 16, 2010. At that hearing, Stone testified that he did not argue the competency procedure issue because

he thought that it was harmless error, that Vickers represented himself at trial, and that there was nothing in Vickers's representation to suggest he was not competent to stand trial. Stone was the only person to testify at the hearing.

Vickers submitted proposed findings of fact and conclusions on January 14, 2011. The State filed its proposed findings and conclusions on February 27, 2011, but also attached three affidavits that had not been offered into evidence at the hearing—one from Sims, one from Judge Spencer, the judge who presided over Vickers's trial, and one from the prosecutor who prosecuted Vickers. In response, Vickers filed a motion to strike the state's proposed findings on March 2, 2011.

On March 17, 2011, the post-conviction court held a hearing on the motion to strike. During that hearing, Vickers orally amended his motion to strike the affidavits attached to the State's proposed findings and the paragraphs referencing the affidavits. In response, the State orally moved to reopen the post-conviction proceedings so it could submit new evidence. After taking the matter under advisement, the post-conviction court granted Vickers's motion to strike but also granted the State's motion to reopen the evidence.

On May 6, 2011, the post-conviction court held another hearing to receive additional evidence. At that hearing, over Vickers's objection, the post-conviction court heard testimony from Sims and Judge Spencer about whether or not they ever had concerns about Vickers's competency to stand trial, and why the psychological exams had been ordered. Both Sims and Judge Spencer testified that they never had concerns about Vickers's competency to stand trial, and Judge Spencer testified that he did not order the exams to

determine Vickers's competency to stand trial, and that he misspoke when using that phrase.

The post-conviction court denied Vickers's petition on August 17, 2011, concluding that the parties were merely confused by the trial court's terminology, that the exams were ordered for purposes of evaluating Vickers's bond reduction request and desire to represent himself, that the competency statute was never triggered, and that Stone was not ineffective for not arguing error on this basis on appeal.

Vickers now appeals.

### Discussion and Decision

#### Standard of Review

Defendants who have exhausted the direct appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition. Sweeney v. State, 886 N.E.2d 1, 6 (Ind. Ct. App. 2008), trans. denied. Post-conviction relief is not a substitute for a direct appeal, Martin v. State, 760 N.E.2d 597, 600 (Ind. 2002) (citing Ind. Post-Conviction Rule 1, § 1(b)), and does not afford the opportunity for a "super-appeal." Badelle v. State, 754 N.E.2d 510, 521 (Ind. Ct. App. 2001), trans. denied. Instead, post-conviction procedures create a narrow remedy for subsequent collateral challenges to convictions. Martin, 760 N.E.2d at 600. Freestanding claims that the original trial court committed error are available only on direct appeal. Id.

The petitioner for post-conviction relief has the burden of establishing his grounds for relief by a preponderance of the evidence. Hollins v. State, 790 N.E.2d 100, 105 (Ind. Ct. App. 2003), trans. denied. When a petitioner appeals from the denial of post-conviction

7

relief, he appeals from a negative judgment, and must convince the appellate court that "'the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court.'" Id. (quoting McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002)). We accept the post-conviction court's findings of fact unless they are "clearly erroneous," but do not grant deference to its conclusions of law. Bivins v. State, 735 N.E.2d 1116, 1126 (Ind. 2000). We neither reweigh the evidence nor judge the credibility of witnesses, and consider only the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. Mahone v. State, 742 N.E.2d 982, 984 (Ind. Ct. App. 2001), trans. denied. It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. Id.

### Ineffective Assistance of Appellate Counsel

Vickers argues that Stone was ineffective for failing to raise and argue the issue of whether or not the trial court followed proper procedure to determine Vickers's competency to stand trial. The State argues that Stone was not ineffective for not challenging this procedure because the trial court never had concerns about Vickers's competency to stand trial, and thus the statutory protections were never triggered.

Indiana Code Section 35-36-3-1 states that:

(a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) or three (3) competent, disinterested:

8

(1) psychiatrists;

(2) psychologists endorsed by the Indiana state board or examiners in psychology as health service providers in psychology; or

(3) physicians;

who have expertise in determining competency.

To establish a violation of the Sixth Amendment right to effective assistance of appellate counsel, Vickers must establish the two elements set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Martin, 760 N.E.2d at 600. First, Vickers must show that his appellate counsel's performance was deficient, meaning that counsel's representation fell below the objective standard of reasonableness. Id. Second, Vickers must demonstrate that the deficient performance actually prejudiced his defense. Id. In other words, the prejudice-prong of Strickland requires Vickers to demonstrate a reasonable probability that, but for his counsel's errors, the result of his direct appeal would have been different. Id.

The issue here is not whether the trial court failed to follow the proper procedure to determine Vickers's competency to stand trial, if that was in question. Instead, the appropriate question is whether Stone's performance, viewed in its entirety, denied Vickers his Sixth Amendment right to counsel. Id. In other words, Vickers must demonstrate that, taken as a whole, "his appellate counsel's performance fell 'outside the wide range of professionally competent assistance.'" Id. (quoting Lowery v. State, 640 N.E.2d 1031, 1041 (Ind. 1994)).

9

*Admission of Evidence*

We first address Vickers's argument that the post-conviction court erred by allowing the State to "rehabilitate" the appellate record (Appellant's Br. p. 10), an issue that we reframe as whether the post-conviction court erred by allowing Sims and Judge Spencer to testify about the trial record. Vickers argues that the admission of Sims's and Judge Spencer's testimony was an error because Stone did not have the benefit of their testimony when preparing his appeal. Accordingly, the testimony was irrelevant to evaluating his effectiveness, and should have therefore been refused.

Indiana Post-Conviction Rule 1(5) provides that the post-conviction court "may receive affidavits, depositions, oral testimony, or other evidence and may at its discretion order the applicant brought before it for the hearing." The admission or exclusion of evidence is within the post-conviction court's sound discretion, and a reviewing court will not disturb its ruling on review unless it has abused its discretion. Badelle, 754 N.E.2d at 521. A court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court. Davis v. Garrett, 887 N.E.2d 942, 946 (Ind. Ct. App. 2008), trans. denied.

To succeed on his petition, Vickers had to show "'*from the information available in the trial record or otherwise known to appellate counsel* that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy,'" Timberlake v. State, 753 N.E.2d 591, 606 (Ind. 2001) (quoting Ben-Yisrayl v. State, 738 N.E.2d 253, 260-61 (Ind. 2000)) (emphasis added). "'When a claim of

ineffective assistance of counsel is based on failure to raise issues on appeal, we note it is the exceptional case that could not be resolved on an examination of the record alone.'" Woods v. State, 701 N.E.2d 1208, 1221 (Ind. 1998) (quoting Gray v. Greer, 800 F.2d 644, 647 (7th Cir. 1986)). Because Stone did not have the benefit of Sims's and Judge Spencer's commentary on the record when preparing Vickers's appeal, the testimony was irrelevant and its admission was an abuse of discretion.

Nevertheless, reversal is not warranted on this point. We first observe that Vickers elicited the testimony from Judge Spencer on cross-examination that he now claims is error. "An appellant cannot maintain grounds for reversible error when the defendant invited the error." Thacker v. State, 578 N.E.2d 784, 786 (Ind. Ct. App. 1991) (concluding that it was invited error for the appellant to elicit testimony from a witness on cross-examination at trial but then claim error in the admission of the testimony on appeal). For example, Vickers asked Judge Spencer whether he ordered an evaluation of Mr. Vickers to determine his competency to stand trial, and Judge Spencer replied, "No, sir, I didn't." Tr. 56. Judge Spencer opined that he did not think that the trial record reflected otherwise, and, in response to Vickers's reading of a certain portion of the record where he stated that he was ordering an exam "to make sure that [Vickers] is competent to stand trial," Judge Spencer stated that he misspoke. Tr. 58-59.

The admission of Sims's testimony was harmless error. "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Ind. Tr. R. 61. "Error may not be predicated upon a ruling

11

which admits or excludes evidence unless a substantial right of the party is affected." Ind. Evid. R. 103. In determining whether an evidentiary error requires reversal, we assess the probable impact on the trier of fact. Wohlwend v. Edwards, 796 N.E.2d 781, 789 (Ind. Ct. App. 2003).

The trial court's order indicates that it largely relied upon the record and not the post-conviction hearing testimony to conclude that the parties were confused about the court's terminology. App. 65. Additionally, if Sims had ever questioned Vickers's competency to stand trial, she would have presumably raised it at some point in the pre-trial proceedings and it would have been apparent from the record. It was therefore harmless for her to testify at the post-conviction hearing that she had no concerns about Vickers's competency.

*Failure to Raise and Make the Competency Procedural Argument on Appeal*

We next turn to the heart of Vickers's ineffectiveness argument, namely that Stone was ineffective for failing to raise and argue the issue of the trial court's competency procedure. Counsel is afforded considerable discretion in choosing strategy and tactics, and we strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Martin, 760 N.E.2d at 600. In cases such as this one, where the ineffective assistance claim is based upon not raising a particular issue, "reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." Bieghler v. State, 690 N.E.2d 188, 194 (Ind. 1997). Even when the failure to argue a potential claim is not a matter of conscious strategy, isolated

12

mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.  Martin, 760 N.E.2d at 600.

We are "particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made."  Bieghler, 690 N.E.2d at 194.  In cases where appellate counsel does not raise particular issues, we employ a two-part test and evaluate: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are clearly stronger than the raised issues.  Fisher v. State, 810 N.E.2d 674, 677 (Ind. 2004).  "Stated somewhat differently, '[a] defendant may establish his appellate counsel's performance was deficient where counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision.'"  Id. (quoting Ben-Yisrayl, 738 N.E.2d at 261).

Here, we do not think that it is obvious from the face of the record that Vickers's competency to stand trial was ever in question.  Although the trial court used the phrase "competency to stand trial" at various points throughout the proceedings, the overall context in which this phrase was used indicates that the trial court ordered the exams of Vickers to inform its decisions on Vickers's requests for a bond reduction and permission to proceed pro se at trial.  For example, on the bond issue, the court stated that "maybe we can figure out a way to get this man released, but I need to know what I'm dealing with," Respondent's Exhibit 1, p. 14-15, and told Vickers that if he did not cooperate with the doctor, he would

13

not have his bond reduced. Even Vickers understood that the exam was ordered in relation to his bond reduction request: "Now exactly what you were looking for in this mental status evaluation, I do not know. But I do know you said this entire hearing or the bond reduction was dependent on it." Respondent's Exhibit. 2, p. 10.

The record also suggests that the trial court ordered the second psychological exam so that it could be sufficiently informed when determining whether Vickers could competently represent himself at trial. The exam was ordered during the September 3, 2004 hearing on Sims's motion to withdraw as counsel. Before ordering the exam, the trial court engaged Vickers in extensive questioning about his understanding of the dangers and disadvantages involved with self-representation. When the trial court decided to order another exam, Vickers again protested, and the trial court continued to discuss the topic of self-representation with Vickers. At no point did any party, including Vickers, question Vickers's competency to stand trial, and Vickers went on to represent himself at trial. If there are no concerns about a defendant's competency to stand trial, then the statutory protections of Indiana Code Section 35-36-3-1 are not triggered. At the very least, the record is unclear regarding whether the trial court or anyone else had concerns about Vickers's competency to stand trial, and the issue was therefore far from obvious.

## Conclusion

The admission of Judge Spencer's and Sims's testimony at the post-conviction hearing was invited and harmless error. The argument that the trial court failed to follow the correct procedure to determine Vickers's competency to stand trial was, at best, not obvious from the

14

record, and, at worst, unavailable to Stone. He was therefore not ineffective on this basis. In short, Vickers has not convinced us that the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. Mahone, 742 N.E.2d at 984. We therefore affirm the post-conviction court's denial of his petition for post-conviction relief.

Affirmed.

BAKER, J., and DARDEN, J., concur.